## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

## NASHVILLE, DECEMBER TERM, 1921

NASHVILLE LABOR TEMPLE *v.* CITY OF NASHVILLE.

*(Nashville.* December Term, 1921.)

1. **TAXATION.** Labor temple held exempt as an ''educational institution.''

The legal title to property was in a non-profit corporation known as a labor temple, the beneficial ownership being in labor unions which had contributed the purchase money to buy the property. A board composed of elected members from the participating unions controlled the temple, and the expense of maintenance was derived from rentals paid by the unions for rooms set apart for their use. At the union meetings lectures and instruction without remuneration were given by the members in their arts and crafts. Mechanical drawing was taught by an instructor whose salary was paid by an outside institution and the federal government jointly. The purpose of the governing board was also to establish schools of mechanical arts and general instruction in law for the public as well as the union members, either free or at low cost. The purpose of the labor organizations, as shown by by-laws of one typical of all, was to elevate social and intel-

(429)

lectual standards, etc.  *Held*, that the temple, while not a charity, was on "educational institution," and as such exempt from tax-ation under Constitution, article 2, section 28, and Acts 1907, chapter 602, section 2, subd. 2.  (*Post, pp*. 439, 440.)

Acts cited and construed: Acts 1907, sec. 2, ch. 602.

Cases cited and approved: Chamber of Commerce v. City of Memphis, 144 Tenn., 291; Ward Seminary v. City Council, 129 Tenn., 412; State v. Fisk University, 87 Tenn., 242; Cumberland Lodge v. Nashville, 127 Tenn., 248.

Case cited and distinguished: M. E. Church, South, v. Hinton, 92 Tenn., 190.

Code cited and construed: Sec. 2513, subsecs. 2, 5, and 6 (S.).
Constitution cited and construed: Art. 2, sec. 28.

2.  **TAXATION.** Corporation holding legal title to property for common use of labor unions held not a ''charitable institution.''

Where labor unions own a beneficial interest in and jointly use property, the legal title tó which is in a holding corporation, the fact that the labor unions dispense charity to their indigent mem-bers and their families does not render the holding company in its corporate capacity` a "charitable institution," whose property is exempt from taxation, especially where no part of its revenue received from the unions is expended by the corporation for charity.  (*Post, pp*. 440, 441.)

3.  **TAXATION.**  Assessment upon property exempt because used for educational purposes is void.

An assessment upon property exempt under Acts 1907, chapter 602, section 2, subd. 2, because used for educational purposes, is void. (*Post, p*. 441.)

4.  **TAXATION.**  Assessment upon property used for educational pur-poses may be challenged, although no protest was made.

The fact that the owner of property did not protest its assessment to the tax assessor or the city board of equalizers does not estop the owner from challenging the assessment by showing that the property is used  for educational purposes such as to exempt it

Nashville Labor Temple v. City of Nashville.

from taxation as provided by Acts 1907, chapter 602, section 2, subdivision 2. (*Post*, p. 441.)

Acts cited and construed: Acts 1907, ch. 602, sec. 2, subsec. 2.

Cases cited and approved: Bank et al. v. Board of Supervisors et al., 168 Iowa, 501; Briscoe v. McMillan, 117 Tenn., 115.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.— HON. JOHN R. AUST, Chancellor.

A. J. GRIFFITH and W. C. CHERRY, for appellant.

MORTON B. ADAMS and J. WASHINGTON MOORE, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

This is an appeal prosecuted by the defendant, city of Nashville, from a decree of the chancery court of Davidson county adjudging complainant exempt from taxation by the city of Nashville.

The cause was heard upon the bill, answer, and a stipulation of facts entered into by counsel. Only two questions are involved:

First. Is the real estate of complainant, located on Eighth Avenue North, in the city of Nashville, exempt from taxation under article 2, section 28, of our Constitution and sub-section 2 of section 2, chapter 602, Acts of 1907?

Second. As to the taxes assessed against complainant by the city of Nashville for the year 1920, and which have

not been paid, is complainant estopped because it did not protest said assessment to the city tax assessor nor appeal to the city board of equalizers?

Article 2, section 28, of our Constitution provides as follows:

"All property real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the state, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and his immediate vendee."

The statute based on this provision of the Constitution, in so far as the same bears upon the question under consideration, exempts the following property from taxation:

"All property belonging to any religious, charitable, scientific, or educational institutions, when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income. All property belonging to such institution used in secular business and competing with a like business that pays taxes to the State shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business." Subsection 2 of section 2, chapter 602, Acts of 1907.

The complainant, Nashville Labor Temple, is a nonprofit or general welfare corporation, chartered and organized under the general incorporation laws of the State embodied in Shannon's Annotated Code at section 2513, and subsections 2, 5, and 6 are copied into its charter. The

particular purposes of said corporation are thus stated in its charter:

"That the members of organized labor in the city of Nashville, Tennessee, or adjacent thereto, may buy or erect and maintain a building in which all members of organized labor may hold meetings for educational and social purposes; to maintain a gymnasium club and other clubs for the promotion of athletic sports; to encourage and support the mechanical arts and to promote the social, physical and intellectual improvement of its members."

It is stipulated that complainant owns a building situated within the corporate limits of the city of Nashville, on Eighth Avenue North, which was purchased by complainant in November, 1919, for the consideration of $50,-000, a portion of which remains unpaid.

That, while the legal title to said property is vested in complainant, the real beneficial ownership is held by a number of local labor unions, which are unincorporated and voluntary associations, who have contributed all the money which has been paid on the purchase price.

The government of the corporation and control of its property is vested in a board known as the general welfare committee, each participating union electing one member of this committee.

Each contributing union holds what is known as "ownership certificates," one certificate being issued for each $50 contributed by it toward the purchase or improvement of the building. These certificates are nonnegotiable and nonassignable, except, with the consent of the general welfare committee, they may be assigned from one participating local union to another local union. These certificates neither bear interest nor participate in profits or dividends.

146 Tenn.—28

The expense of operating and maintaining the temple is derived from rentals paid by the various unions for rooms or halls set apart for their use, but, if any union becomes financially unable to pay rental, it is allowed the use of its room or hall without rent.

There are nine ladies' auxiliary organizations, and they are given the use of their rooms without charge or rent.

There is also an auditorium in the building known as McAdoo Hall, which is occasionally furnished without charge to bodies, organizations, or meetings outside of labor unions, and for some months the use of this hall has been gratuitously furnished to the Nashville Symphony Orchestra for the purpose of rehearsals, etc.

No room, hall, or space in the building is rented to any person, firm, or corporation except as herein stated, and the rental charged is only for the purpose of securing a sum sufficient to maintain the temple, and is, in fact, only an apportionment among the participating unions of the expense according to the space occupied, number of meetings and ability to contribute.

The ordinary meetings of these unions are executive or secret, and no person other than a member of such union is permitted to be present, unless upon special invitation. At these meetings a number of the unions have one of their members, by lectures and instructions given voluntarily and without remuneration, teach the various phases or principles of their art or craft; such instructions being designed to prepare those so taught to pass the required examinations by the unions and become a journeyman of that art or craft.

Blackboards are installed in the several rooms or halls of the temple by the local unions of sheet metal workers,

machinists, boiler makers, steam fitters, carpenters, plumbers, and perhaps others. In each of these unions voluntary and unpaid instructors from their membership, who are specially fitted and competent to do so, deliver lectures and instructions designed to promote the skill of such members in their art or craft.

Subsequent to the filing of the bill in this cause, but prior to the hearing in the court below, a school of mechanical drawing has been opened and taught, and the hall where said school is taught has been equipped with tools, desks, chairs, and other paraphernalia necessary for the conduct of this school, which is open and free to all applicants, whether members of the union or not, and is in session four nights in each week. In this school there is one instructor, whose salary is paid by commissioners of Watkin's Institute and the federal government jointly.

The stipulation of facts contains this further agreement:

"Because of lack of financial ability and because the Labor Temple is in a formative period, the complainant through its general welfare committee and board of directors has not accomplished as yet all that was in the mind of the original corporators. It was and is in the mind and purpose of the general welfare committee and the board, as rapidly as possible, to promote, establish, and maintain schools for instruction in the mechanical arts, and in the general principles of law, either free or at the lowest possible cost, and for the general public without regard to membership in labor unions."

The several local unions are members of or affiliated with larger bodies known as grand or international bodies. A copy of the constitution and by-laws of the International

Brotherhood of Locomotive Engineers is filed as a part of the stipulation of facts, and it is agreed it is typical of and fairly represents all the others.

In its preamble it is declared that the purposes of the organization shall be to combine the interests of locomotive engineers, elevate their social, moral, and intellectual standard, guard their financial interests, and promote their general welfare. Its cardinal principles are sobriety, truth, justice, morality, and charity, as will appear from the following quotation from its preamble:

"The true principles of the brotherhood of man are the fundamental principles of the order, Do unto others as you would they should do unto you, and so fulfill the law. And in harmony with this divine admonition the hand of fellowship is held out to the brother in need, and sympathy and helpfulness are extended to the widow and orphans and the opportunity given to every brother to provide for the future of himself and family, through the insurance and pension departments created for the purpose of protecting the welfare of all members and their dependents."

Dues must be paid by each member of a local union to the Grand Union, and from these dues a sum is set apart to the indigent fund to aid in the support and comfort of those who by misfortune have become indigent; to the creation of a pension fund from which pensions are paid to those, who by reason of old age, mental failure, or other physical infirmity, have become a charge.

By section 101 of said constitution and by-laws it is provided that in case any member dies, leaving a widow or children, inquiry shall be made into their financial condition, and, if financial assistance is needed, such shall be

given, the children not to be neglected or allowed to suf-
fer, and neither the children nor the widow shall be allowed
to become destitute.

Each member is also required, under certain provisions,
to become a member of the mutual life and accident arm or
branch, so that a sum may be accumulated for his bene-
ficiaries in case of death.

By section 46 each member is obligated to recognize all
others in good standing; to abstain from saying or doing
anything to traduce his character or injure his good name
so long as he has obeyed the law.

In section 27 it is provided that no person may become
a member of such union unless he be a white man not less
than 21 years of age or more than 50, and can read and
write, and is of good moral character, temperate habits,
and possesses experience in his calling.

It is insisted by the city of Nashville that the foregoing
facts do not bring complainant in that class of institutions
whose property is used exclusively or purely for religious,
educational, scientific, or charitable purposes, and its
property is therefore subject to taxation by the municipal-
ity.

It is insisted by the city of Nashville that this cause is
controlled by the holding of this court in the case of
*Chamber of Commerce* v. *City of Memphis,* 144 Tenn., 291,
232 S. W., 73.

Upon the other hand, it is insisted by complainant that
the cause is controlled by the holding of this court in the
case of *Ward Seminary* v. *City Council,* 129 Tenn., 412,
167 S. W., 113, *Cumberland Lodge* v. *Nashville,* 127 Tenn.,
248, 154 S. W., 1141, and other similar cases.

In *Chamber of Commerce* v. *City of Memphis,* supra, the
right of the city of Memphis to tax its property was chal-

lenged by the Chamber of Commerce. This court held
that on the facts disclosed by the record in that case the
Chamber of Commerce was a business organization, and
that its primary purpose was to promote the business and
commercial interests of the city of Memphis. This purpose
was expressly stated in its charter. It was therefore held
that it was neither an educational, scientific, or charitable
institution in the sense and meaning of our Constitution
and statute exempting the property of such institutions
from taxation.

We think the instant cause, on its facts, is very different
and is not controlled by that case. We think the instant
cause falls within the rule announced by this court in
*Ward Seminary* v. *City Council* and *Cumberland Lodge*
v. *Nashville,* supra. In the first of these cases it was
held that, although the property was owned by a
private corporation which was operated for the profit of
its stockholders, such of its property as was being used for
educational purposes was exempt from taxation, regard-
less of the profits which the corporation might earn and
receive.

In *Cumberland Lodge* v. *Nashville,* supra, this court
said: "An educational institution, within the meaning of
the Constitution and the act of 1907, is one which teaches
and improves its pupils. One of the admitted purposes of
the complainant lodge is the teaching of patriotism, be-
nevolence, and orderly moral life, for the purpose of the
improvement of its members, and the extension of the in-
fluence and blessings of Masonry. The store and range of
information of Masonry as an educational institution must
of necessity be extensive, for it is common knowledge that
its origin is ancient, antedating by many centuries the

first principles of the common law and our system of equity jurisprudence. It is not, we think, a far cry to hold that one of the purposes of complainant institution is educational. Its second purpose is the support and maintenance of a widows' and orphans' home, and the assistance of needy Masons and needy Masonic lodges. That this purpose is charitable we have no doubt. Its two purposes, as we find them, are educational and charitable.

"The maintenance by it of its reading rooms and its lodge rooms, and the effort by it to secure for itself a permanent home, are but agencies for the advancement and enlargement of the two general purposes above set out. The same may be said of the entertainments which it affords its members. That its purpose is free from the taint of individual profit, and that it is not an institution for private gain, that it has no 'capital stock, and declares no dividends, are facts which, upon this record, cannot be controverted.

"From all of the foregoing, the conclusion we reach is that, under the Constitution of 1870 and the act of 1907, the property of the complainant lodge was intended to be exempt from taxation by the legislature in the passage of the act of 1907."

In *State* v. *Fisk University*, 87 Tenn., 242, 10 S. W., 284, it was held by this court that the intention of the legislature must govern in ascertaining the extent of such exemptions, and that in arriving at such intention the same strictness of construction will not be indulged, where the exemption is to religious, scientific, literary, and educational institutions, that will be applied in considering exemptions to corporations created and operating for private gain or profit.

The holding in that case was quoted with approval in *M. E. Church, South* v. *Hinton,* 92 Tenn., 190, 21 S. W., 322, 19 L. R. A., 289, with this additional observation:

"The fundamental ground upon which all such exemptions are based is a benefit conferred upon the public by such institutions, and a consequent relief to some extent of the burden upon the State to care for and advance the interests of its citizens."

Complainant does not claim to be a religious or scientific institution, but it does claim to be both an educational and charitable institution in the sense and meaning of the constitution and the statute under which the exemption is claimed.

Applying the same test to the facts of the cause before us that was applied by this court in *Ward Seminary* v. *City Council* and *Cumberland Lodge* v. *Nashville,* supra, we see no escape from the conclusion that complainant is an educational institution. We are not so well satisfied as to its being a charitable institution. The dispensation of charity in any form, in the modern and commonly accepted definition of the term, is not one of its declared purposes, and is not practiced by it as an institution. The fact that the local labor unions, who own a beneficial interest in complainant corporation, dispense charity to indigent members and their family in accordance with their constitution and by-laws, does not render complainant, in its corporate capacity, a charitable institution. As we understand the constitution and by-laws of these local labor unions, their dispensation of charity is wholly independent of their connection with complainant, and such charity is dispensed by them without regard to their beneficial interest in complainant corporation. It is not shown that any part of the revenue or income received by complain-

ant corporation from rents or other sources is used or expended for charitable purposes.

On the facts stipulated, it appears that complainant's property is devoted to the purposes of education. It teaches men to be better machinists, better sheet metal workers, better boiler makers, better steam pipe fitters, better carpenters, etc.

As said by the learned chancellor, to teach men in these arts or crafts is as essential and beneficial to the public as to teach one astronomy, civil engineering, medicine, pharmacy, or other useful professions. All of such arts or crafts, in which instructions are given by complainant corporation, are highly essential to the commercial and business interests of the country, and to the public welfare. Instructions which will make a better machinist, boiler maker, steam pipe fitter, plumber, or carpenter confers a benefit upon the public, and a consequent relief, to some extent, of the burden upon the state to care for and advance the interests of its citizens. It is conceded that complainant corporation is in no sense a corporation for profit.

On the second question presented, it is sufficient to say that complainant's property being exempt from taxation under the statute, its assessment by the city for the year 1920 was void; and the fact that complainant did not protest said assessment to the tax assessor, or to the city board of equalizers, does not estop it from challenging said assessment in the present action. *Bank et al.* v. *Board of Supervisors et al.,* 168 Iowa, 501, 150 N. W., 704, Ann. Cas., 1916C, 227, and note; *Briscoe* v. *McMillan,* 117 Tenn., 115, 100 S. W., 111.

There is no error in the decree of the chancellor, and it is affirmed, with costs.