No. 14,373.

LANE ET AL. TRUSTEES *v.* WILSON, MANAGER OF REVENUE OF THE CITY AND COUNTY OF DENVER.

(83 P. [2d] 331)

Decided October 3, 1938.

100

Mr. Floyd F. Miles, for plaintiffs in error.

Mr. Malcolm Lindsey, Mr. Thomas H. Gibson, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Action by plaintiffs in error to enjoin the manager of revenue of the City and County of Denver from levying or collecting general taxes on real estate held by them, as trustees and holders of the legal title, and who contend that said real estate is exempt under section 5, article X, Colorado Constitution and statutes enacted thereunder, claiming that the lots and the building thereon are used for strictly charitable purposes within the meaning of the constitutional provisions. The trial court held that the exemption did not apply. To review this holding plaintiffs have sued out a writ of error, and we are asked to reverse the judgment of the lower court.

The complaint alleges that Local Union No. 55 is an unincorporated fraternal, benevolent and charitable association; that it owns the land and building described therein, and uses and keeps the same in furtherance of its objects and purposes.

The stipulation of facts indicates the following: That Local Union No. 55 is a subordinate union of the United Brotherhood of Carpenters and Joiners of America, which in turn is affiliated with the American Federation of Labor; that the real estate described in the complaint consists of two lots with the building thereon, which contains meeting rooms and offices which are used by the organization in carrying on its activities; that in addition to Local Union No. 55, other labor unions with like purposes and activities, use the lodge rooms by arrangement with the Carpenters' Union; that the building is devoted exclusively to the uses and purposes of Local Union No. 55 and the other local unions, all of which dispense large sums every year to members and their families for charity and relief; that no part of the premises is used for any commercial purpose whatever; that no income is received and no part of the building is devoted to anything but the objects and purposes of the several organizations which use it; that in a general way the objects of Local Union No. 55 are as stated in its constitution, as follows: ''Section 2. The objects of the United Brotherhood are: To discourage piece work, to encourage an apprentice system and a higher standard of skill, to cultivate friendship, to assist each other to secure employment, to reduce the hours of daily labor, to secure adequate pay for our work, to establish a weekly pay day, to furnish aid in cases of death or permanent disability, and by legal and proper means to elevate the moral, intellectual and social conditions of all our members, and to improve the trade.''

It is agreed that the only question presented for decision is whether the real estate owned by a labor union, and used exclusively in furtherance of its objects and purposes, is used for ''strictly charitable purposes'' within the meaning of said section 5 of article X.

The definition given a trade union by act of Congress (June 29, 1886) was as follows: ''The term 'national trade union' in the meaning of this act, shall

signify any association of working people having two or more branches in the states or territories of the United States for the purpose of aiding its members to become more skillful and efficient workers, the promotion of their general intelligence, the elevation of their character, the regulation of their wages and their hours and conditions of labor, the protection of their individual rights in the prosecution of their trade or trades, the raising of funds for the benefit of sick, disabled, or unemployed members, or the families of deceased members, or for such other object or objects for which working people may lawfully combine, having in view their mutual protection or benefit.'' U. S. Stat. at Large, vol. 24, p. 86, c. 567.

We take it that this definition is fairly accurate even today; but assuming this to be true, we are not here called upon to determine whether the purpose of an organization which has these as its exclusive objects, would be within the category of a ''strictly charitable purpose.'' The question presented for resolution is as to the status of the property held by the trustees, plaintiffs in error, and our inquiry is limited by its own stated objectives and the stipulated facts, as respects the use of the property.

Counsel for plaintiffs in error say concerning *Nashville Labor Temple v. City of Nashville*, 146 Tenn. 429, 243 S. W. 78: ''We believe [it] to be the only reported case where exemption of the property of a labor union was involved.'' The court there held the real estate exempt on the ground that the property was ''devoted to the purpose of education.'' That purpose is not even suggested in the present case and consequently the authority is inapplicable here.

Plaintiffs in error rely upon our general liberality in recent decisions in construing the constitutional language here involved, particularly as affecting the Masonic and other fraternities. Counsel assert that there is no difference between the activities of the union here interested and carried on in its building and those

exercised by Masonic lodges. We think a comparison of the objectives of these organizations will make the distinction obvious. 61 C. J. 454.

We acknowledge the great debt that America owes to the labor movement. The history of trade unionism is full of examples of men and women who have spent their lives in unselfish service to improve the lot of working people. But in the case at hand, while commending the noble and laudable work performed by plaintiff in error, and similar groups, it must be remembered that there is always the ''quid pro quo'' for help and relief that is meted out. It must be conceded, we think, that the distinction the law makes in these cases is that announced by St. Paul in beautiful brevity (1 Cor. 13-5) when he said: ''Charity seeketh not her own.''

 There is no doubt that the admitted facts in this case bring it within the holding of *Commissioners v. D. & R. G. Ass'n,* 70 Colo. 592, 203 Pac. 850. While the holding there has been modified to the extent that the charity need not be a public one, we still adhere to the distinction between a charity, and ''a beneficial society whose beneficience is confined to the members, their families, dependents or friends, and depends upon the contributions made,'' not voluntarily given, but assessed against the members. Such an organization, we have described as ''not a charity, but a private institution for the mutual advantage of the members.'' *Commissioners v. D. & R. G. Ass'n, supra.*

No good purpose would be served by a further analysis of our holdings in this general type of cases.

We think the judgment of the trial court was correct and it is, accordingly, affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.