George C. LaMANNA, Assessor of Property
of Shelby County, Tennessee,
et al., Petitioners,

v.

ELECTRICAL WORKERS LOCAL UNION
NO. 474 OF the INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, AFL–CIO, Respondent.

Supreme Court of Tennessee.

Dec. 30, 1974.

--------⋆--------

J. Minor Tait, Jr., Asst. County Atty., William C. Bateman, Jr., Asst. City Atty., Memphis, for petitioners; C. Cleveland Drennon, Jr., County Atty., Memphis, Frierson M. Graves, Jr., City Atty., Memphis, of counsel.

Marx J. Borod, Kemper B. Durand, Memphis, for respondent; Rosenfield, Borod, Bogatin & Kremer, Memphis, of counsel.

## OPINION

HARBISON, Justice.

This case involves a claim to tax exempt status of the headquarters and parking facilities of a local chapter of an international union. The premises are situated in Memphis, Shelby County, Tennessee, and contain the business offices, hiring hall, insurance and record offices of the local union, some classrooms used for instructional purposes, and the parking area. Exemption is claimed upon the basis that the local is an "educational institution" within the meaning of the Tennessee statutes on the subject, and that the premises in question are used exclusively for educational purposes.

The Chancellor held that the premises were entitled only to a partial exemption, but the Court of Appeals modified his decision so as to allow a tax exempt status to all of the property, real and personal, except that portion of the real estate and personal property comprising one office which was used for a "Credit Union".

The facts of the case are undisputed. Some of the factual information in the record was stipulated, and the remainder was introduced through the testimony of a single witness, the business manager of the local union.

As presented in this record, therefore, the question of whether the property in question is entitled to tax exempt status is primarily a legal one. The dispute between the parties concerns the extent to which the admitted uses of the property may place it within the exemptions allowed by state statutes.

As stated by this Court in a recent case presenting a similar determination:

"In our view the determinations of the Boards and the courts below were not findings of fact and the scope of this court's review is, therefore, much broader. The record indicates that there was no dispute regarding what items of property were owned by the corporations nor regarding what activities occurred inside the buildings that made use of the subject property. What was disputed, and disputed with considerable vigor by all parties, was whether the acknowledged uses of the property were within the statutory exemption. While such categories as 'question of law' or 'question of fact' can never have precise boundaries, the issue involved here requiring, first, a determination of the scope of the exemption and only then an application of the exemption to the facts, does not result simply in a fact conclusion allowing only limited appellate judicial review." Book

Agents of Methodist Episcopal Church, South v. State Board of Equalization, 513 S.W.2d 514, 520–521 (Tenn.1974).

In the case just cited, this Court reviewed in depth the history of the tax exemption statutes in Tennessee. Although by a divided decision, the majority of the Court held that a publishing house owned by one large Protestant denomination and the publishing operations of a second were entitled to exemption to the degree and extent that the activities conducted on the subject properties were "exclusively religious". The Court permitted a proportionate exemption of the properties, based upon the percentage of revenues derived from exclusively religious activities as against total revenues received by the institutions from all activities conducted on the subject properties.

The *Book Agents* case represents the most recent and comprehensive treatment of the subject of the tax exemption statutes in this state. The opinions in the case were released after the decision of the Court of Appeals in the present case, so that neither of the courts below had access thereto in arriving at their conclusions. Since the subject has received such recent and exhaustive treatment by this Court, we do not deem it necessary to repeat here the historical background and trends in judicial interpretation of the tax exemption statute involved. T.C.A. § 67–502(2). It is necessary to discuss a number of the cases relied upon by the parties, however, as well as the factual data presented by the record.

The real property involved in this case consists of two parcels owned by the respondent union through its trustees. One of these is situated at 1870 Madison Avenue in the City of Memphis, consisting of a lot 100 feet wide and 200 feet deep. Situated thereon is a one-story brick building with a basement, containing a total of 10,168 square feet. In addition there are parking spaces for approximately fifteen automobiles on the same lot. The other parcel of land is adjacent to the first and consists of an unimproved lot fronting 100 feet on Madison Avenue and running back 215 feet. This lot has a graveled surface, and is used as a parking lot for automobiles of union members and other persons having occasion to visit the premises. It is not available for parking by members of the general public.

There are situated in the basement of the building in question a boiler or furnace room, which is also used for storage, and two classrooms which are used for the conducting of classes in two different programs. A total of forty-four persons are enrolled in the two programs of instruction, eighteen of these being in a program designed for trainees or apprentices in residential wiring, and the other twenty-six persons receiving instruction in more advanced electrical work. In addition these two rooms are used as meeting places for two Boy Scout troops sponsored by the union.

The main floor of the building contains the offices of the business manager and his assistant, the financial secretary's office, a referral office (used to refer persons to job openings), a health and welfare office, accident insurance office, and a credit union office. In addition there is a meeting hall in which regular union meetings are held, and a lounge and executive board room, which is used for various types of committee meetings and as a lounge for women employees. Members of the union seeking employment regularly come to these first floor premises.

In one of the exhibits in the record the business manager of the union listed the number of hours devoted to various activities occurring on the premises. During the calendar year 1971, 312 hours were devoted to apprentice training or instruction, and 156 hours to journeyman training. Some 546 hours were devoted to Boy Scout activities. Considering the latter to be "educational" for present purposes, this would make a total of 1014 hours devoted to instructional or educational activities,

against a total of 10,085 total hours for all activities shown to have been conducted during 1971. Of course it is insisted that some of the regular union meetings and other programs have some educational content, but this certainly would be true of any business meeting held anywhere, and we do not think that the regular business activities or meetings of the union can be considered to be "educational" within the purview of the exemption statute.

■ The same exhibit shows that of the total listed above, some 2288 hours were devoted to activities of the Federal Credit Union situated on the premises. This is a facility which is chartered independently of the union, and which merely uses the union facilities. Union members are permitted to make deposits to the credit union and to borrow money from it. The testimony is clear that the purpose of having the credit union on the premises was to facilitate the extension of credit, and to make credit available on easier terms, than might otherwise be available to union members or their families. It is also undisputed that if there should be a profit from the operations of the credit union, this profit would inure to the individual owners of shares therein. Neither of the courts below has found that the operation of the credit union could in any sense be considered to be "educational" although it is argued before us that one purpose of the credit union is to "teach thrift" to the union members. We regard this proposition as untenable, and agree with the courts below as to this portion of the premises.

Indeed, we feel constrained to state that considerable liberality is required to define a union headquarters facility as an "educational institution" within the meaning of the Tennessee exemption statutes. Presented with this question, most of the other appellate courts of the nation have rejected the contention that a union hall is an educational institution, or charitable institution, so as to be entitled to exemption within the meaning of the various state statutes. See County Assessor v. United Brotherhood of Carpenters & Joiners of America, Local No. 329, 202 Okl. 162, 211 P.2d 790 (1949); Lane v. Wilson, 103 Colo. 99, 83 P.2d 331 (1938); Johnson v. Sparkman, 159 Fla. 276, 31 So.2d 863, 172 ALR 1067 (1947). Indeed, even a clinic or hospital, operated by the trust funds of a union, was held not to be entitled to a charitable exemption, and was held not to be used "exclusively . . . for purposes purely charitable" under the laws of Missouri. Trustees of Local 88, Meat and Related Industries, Health and Welfare Fund Trust v. State Tax Commission, 367 S.W. 2d 549 (Mo.1963).

Great reliance was placed by respondent and by the courts below on the case of Nashville Labor Temple v. City of Nashville, 146 Tenn. 429, 243 S.W. 78 (1921). We deem this reliance to be misplaced, and consider the facts of that case to be materially different from the factual situation presented in the instant case. There, a facility was owned in the City of Nashville by a holding company, made up of representatives of a number of labor unions. The holding company was a nonprofit corporation, controlled by a board composed of elected members of the participating unions. Extensive programs of instruction in various arts and crafts were given at this facility, and, on the factual situation presented, this Court held that the facility was conducted as an educational institution. The Court declined to hold that it was a charitable institution within the accepted definition of that term, even though the individual local labor unions did dispense charity to their own indigent members and their families.

■ No such situation is presented here. The subject property is simply the headquarters for the local union. The business manager testified that his principal duties consisted of policing union jobs, organizing, and conducting other business activities of the union. This was also true of his assistant manager. The various offices referred to above are not in any sense educational offices or offices incident to the

carrying on of educational operations. As stated previously, a total of forty-four persons are shown to be enrolled in such educational programs as are actually carried on on the premises, but despite this fact the Court of Appeals exempted not only the parking facilities on the lot where the house is situated, but the entire adjacent parking lot. Under the authority of City of Nashville v. State Board of Equalization, 210 Tenn. 587, 360 S.W.2d 458 (1962), it is doubtful that the large parking lot would be entitled to an exemption under any circumstances, unless its use could be deemed directly incidental to some educational program or essential to the carrying on of that program. George Peabody College for Teachers v. State Board of Equalization, 219 Tenn. 123, 407 S.W.2d 443 (1966).

As discussed by this Court in the *Book Agents* case, *supra*:

> "The tax exempt statutes in Tennessee are construed liberally in favor of religious, charitable and educational institutions . . . The basis for a liberal construction is a 'benefit conferred on the public by such institutions, and a consequent relief, to some extent, of the burden upon the state to care for and advance the interests of its own citizens.' " 513 S.W.2d at 521.

In this state, as laid down in the landmark decision of City of Nashville v. State Board of Equalization, 210 Tenn. 587, 360 S.W.2d 458 (1962) the statute in question exempts property of religious, charitable, scientific or educational institutions if and only when such property (1) is "occupied by such institution or its officers exclusively for carrying out thereupon one (1) or more of the purposes" of its charter, and (2) is being "used exclusively" for such purpose, and any part of such real estate "not so used exclusively" for such purpose, "but leased or otherwise used for other purposes" shall be taxed to the extent

of its value. 210 Tenn. at 605, 360 S.W.2d at 466.

As previously stated, we have serious reservations as to whether the labor union in question qualifies as an educational institution at all. Certainly its educational activities are more or less incidental to its primary purposes of promoting the general welfare and financial interests of its members. Nevertheless, it is a nonprofit organization, and no activities for profit are conducted on any of the subject property.

■ It is clear in the Tennessee cases that the fact that an organization is chartered for the general welfare, or not for profit, is not sufficient to entitle its property to tax exempt status. Memphis Chamber of Commerce v. City of Memphis, 144 Tenn. 291, 232 S.W. 73 (1921); North Gates Elks Club v. Garner, 496 S.W.2d 887 (Tenn.1973).

■ As stated in the cited cases however, the real test determinative of a corporation's tax exempt status is the use it makes of the property. In the latter case premises owned and occupied by a chartered Elks Club were held to be used primarily for social purposes, rather than for purposes exempt under the statute. In the *Memphis Chamber of Commerce* case, *supra*, the property was occupied by a nonprofit corporation, but the Court held that its activities were primarily for the purpose of improving the business interests of the City of Memphis and that it was a social and co-operative organization among the businessmen of the city. The property was held not to be entitled to exempt status.

The same result was reached with respect to the University Club in Memphis in the case of State v. Rowan, 171 Tenn. 612, 106 S.W.2d 861 (1937). In that case, where exemption was claimed as an educational institution, the educational activities were deemed to be merely incidental and the institution was held to be a social and

athletic club. After a review of the activities conducted on the premises, the Court in the *Rowan* case said:

"While defendant club may be said to be an educational institution in a broad sense, we think it cannot be regarded as an educational institution in the sense of section 28 of article 2 of the Constitution. So far the exemption authorized by that section of the Constitution to educational institutions has not been extended to any institutions save schools or institutions where actual instruction was given as from teacher to pupil." 171 Tenn. at 622, 106 S.W.2d at 864.

Quoting from the earlier *Memphis Chamber of Commerce* case, the Court said:

" . . . 'the mere fact that it administers to charity, or may give instructions of an educational nature along certain lines, does not render it an educational or charitable institution in the sense of our Constitution and statute exempting the property of such institutions from taxation.'" 171 Tenn. 621, 106 S. W.2d 864.

 It is the conclusion of this Court that the local union in question is not primarily an educational institution, within the accepted meaning of that term, and that its educational activities are incidental. Nevertheless it is a nonprofit corporation, and the record before us does satisfactorily show that the two classrooms in the basement of the premises are used exclusively for instructional purposes. No other portion of the premises is shown to be used for purposes which, in our opinion, can be designated as educational, except in the very broadest and most generic sense of that term. None of the parking facilities are shown to be used exclusively for the students, nor is any particular percentage of the parking area shown to be a necessary incident for educational purposes. Since the instructional program comprises approximately ten percent of the total activity shown to be conducted on the property, however, we think that the exemption of the parking spaces on the property at 1870 Madison Avenue, allowed by the chancellor, should be permitted to stand.

We therefore modify the decisions of the courts below so as to allow exemption of those parking spaces and of the two classrooms in the basement of the building in question, together with the personal property usually and regularly situated therein and regularly and customarily used for the conducting of classroom and instructional activity. All other portions of the real and personal property situated on the subject premises will be placed on the tax rolls of the city and county respectively.

The costs of the cause will be divided equally, one-third to the city taxing officials, one-third to the county taxing officials and one-third to respondent.

HENRY, COOPER and BROCK, JJ., concur.

FONES, C. J., not participating.