**SALT LAKE COUNTY, a Body Politic, Plaintiff,**

v.

**TAX COMMISSION of the State of Utah ex rel. GREATER SALT LAKE RECREATIONAL FACILITIES, Defendants.**

No. 15737.

Supreme Court of Utah.

May 22, 1979.

---

1. *Johnson v. Hughes*, 120 Utah 50, 232 P.2d 362 (1951).

Theodore L. Cannon, Salt Lake County Atty., Bill Thomas Peters, Sp. Deputy County Atty., Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Leon W. Crockett, Thomas G. Kimble, Salt Lake City, for defendants.

WILKINS, Justice:

We here review a determination by the Defendant Tax Commission of the State of Utah (the "Commission") that certain property (the "Sports Mall") in Murray City (the "City") is exempt from taxation either because it is "property of" the City or because it is "used exclusively for . . . charitable purposes." The Constitution of

Utah[1] exempts property in either category. Defendants claim no other basis of exemption.

Plaintiff Salt Lake County taxed the realty; the Salt Lake County Board of Equalization denied the taxpayer's claim of tax exemption, and that denial was reversed by the Commission's decision we now review.

■ The facts with regard to the Sports Mall's ownership and uses are stipulated. We consequently are concerned only with the validity of the Commission's interpretation of the applicable constitutional language.

For $285,000 in 1973, Sports Mall, Inc., a business corporation, acquired the Sports Mall for development as an athletic and recreational facilities complex. After the location was rezoned and annexed to the City, Sports Mall, Inc. sold the realty to Defendant Greater Salt Lake Recreational Facilities, Inc. ("GRF"), a nonprofit corporation, for $650,000 in cash and notes secured by the realty. GRF's board of trustees is composed of individuals who are, with one exception, officers and directors of Sports Mall, Inc. GRF engaged Sports Mall, Inc. to manage the Sports Mall over a twenty year period for 5% of gross receipts. The contract is terminable by GRF, if it is dissatisfied with the management performance.

The City, by its ordinance No. 369, approved GRF's issuance of $2.05 million in bonds under the City's sponsorship. The City has no responsibility for payment of the bonds. In the event of GRF's dissolution, its assets are distributable to the City, and the City additionally has an option, so long as any bonded indebtedness is outstanding, to purchase the Sports Mall by paying principal and interest remaining on all outstanding bonds and notes. When the bonds are fully paid by GRF, title to the Sports Mall will, by the terms of various instruments underlying the bonding transactions, pass to the City. If GRF defaults to its secured creditors and the City chooses not to exercise its purchase option, the Sports Mall will be subject to public sale.

The Sports Mall generates income from membership initiation and transfer fees, dues, charges for use of facilities, and lessons by staff professionals. Memberships are available to the public in the priority of application filing. Fees and other charges are geared to operating costs including debt retirement and payment of the management fee. The public has access to the facilities (except as reserved by members) for fees at or near what members pay. Some of the facilities are utilized for organized team play on a scheduled basis, and team members need not be Sports Mall members.

On the stipulated facts, we cannot agree that the Sports Mall is property of the City. The City has rights in the realty which may influence the value at which the rights of GRF could legitimately be appraised, but GRF holds record title to the realty, and rights in real property are subject to taxation unless used exclusively for charitable purposes.

■ Charity is the contribution or dedication of something of value to the poor[2] or at least to the common good. What constitutes "common" and what constitutes "good" are subject to judgment in the light of changing community mores. By exempting property used for charitable purposes, the constitutional convention sought to encourage individual or group sacrifice for the welfare of the community. An essential element of charity is an act of giving.

■ In *BPOE v. Commission*[3] and *Baker v. One Piece of Improved Real Property*,[4] we considered the situation of non-profit

1. Article XIII, Sec. 2, Constitution of Utah.

2. This Court has given the term much broader definition, but the delegates to the constitutional convention thought of charity in terms of the care of "old gray-headed, venerable men that fortune has not favored," and "children that are left homeless." Proceedings of the Constitutional Convention, 1895, Volume 1, pp. 273 et seq.

3. Utah, 536 P.2d 1214 (1975).

4. Utah, 570 P.2d 1023 (1977).

fraternal associations which provide to their membership an environment for social and recreational interchange and also, as a continuing, charter-prescribed corporate objective, undertake to raise money for the poor. We held that each case must be reviewed on its own facts, but such an organization's property qualifies for exemption if its charitable contributions are significant in terms of the total money and work expenditure or the percentage of total income contributed. The property is considered to be used for a charitable purpose because it is essential to the life of the organization which makes the charitable contribution.

In the case before us, it is difficult to identify a gift or a charitable impulse. The principals of Sports Mall, Inc. continue to be in charge of the enterprise they founded in 1973. For the twenty year term of the above noted management contract, barring unlikely contingencies, the Sports Mall will be operated for their economic gain. The proceeds from operation are dedicated first, of course, to the payment of the bonded indebtedness but otherwise to the payment of (1) Sports Mall, Inc.'s management fee and (2) the remainder of the purchase price for which GRF acquired the Sports Mall from Sports Mall, Inc.

■ Defendants argue that any organization which, without hope of profit, engages in activity contributing to the physical, mental, or spiritual betterment of the citizenry is a charitable organization, and its property is exempt from taxation. We do not agree that the generalization is valid where a profit motive underlies the activity. It is not within the constitutional purview that tax exemption be granted merely because a "non-profit" corporation is interposed between an entrepreneur and his customers even though the activity to which the enterprise is oriented is physically, mentally, or spiritually uplifting.

■ In applying for review of the Commission's decision in this case, Salt Lake County did not expressly waive (as our statute [5] contemplates that it should) its right of access to the Third Judicial District Court for the relief it seeks here. We treat the omission as a pleading deficiency of the kind to which the pleader's adversary must make timely objection or the right to object is waived.[6] In this connection, it is significant that the County's power to tax is not dependent on the above cited statute; the statute merely regulates the exercise of that power. The statute does not undertake to remove the review of Commission decisions from the jurisdiction of this Court; it merely states a condition which an applicant for review is obligated to satisfy.[7] Defendants did not, by motion or in written or oral argument, raise any objection to the defect; we do not view the defect as one which goes to the heart of the controversy, and the right to object is waived.

We remand with instructions to the Commission that it deny the exemption.

MAUGHAN, HALL and STEWART, JJ., concur.

CROCKETT, C. J., having disqualified himself, does not participate herein.

CROFT, District Judge [1] (concurring).

I concur. However, in doing so I wish to note the 1977 legislation [2] by which the legislature gave to the tax division of the district court the exclusive jurisdiction over all appeals from and petitions for review of decisions by the state tax commission rendered after formal hearings before the commission. A party aggrieved by a decision of

**5.** Sec. 59–24–1 et seq., U.C.A.1953, as amended 1977.

**6.** 61 Am.Jur.2d 782, Pleading, §§ 387 et seq.

**7.** *O'Connor v. City of Fond duLac*, 109 Wis. 253, 85 N.W. 327 (1901).

**1.** Judge Croft did not sit with the Court during oral argument but is participating in the decision at the request of Chief Justice Crockett. In doing so Judge Croft has reviewed the record on appeal, read the briefs and listened to the tape recording of the oral arguments made at the hearings before the Court.

**2.** Sec. 59–24–1 et seq., U.C.A.1953.

the commission under the statute may choose to waive the right of review by the tax division of the district court and apply for a writ of certiorari to the Supreme Court in which event such party *must* state in the application for the writ that the party is waiving the right of review and trial de novo in the tax division of the district court. The petition filed does not so state. I do not believe this failure is jurisdictional but do believe that the procedural requirements of the statutes should be followed.