**SALT LAKE COUNTY, a body politic, By and Through the COUNTY BOARD OF EQUALIZATION OF SALT LAKE COUNTY, State of Utah, Plaintiff,**

**v.**

**TAX COMMISSION OF the STATE OF UTAH, ex rel., LABORERS LOCAL NO. 295 BUILDING ASSOCIATION, et al., Defendants.**

No. 17102.

Supreme Court of Utah.

Feb. 3, 1983.

Theodore L. Cannon and Bill Thomas Peters, Salt Lake City, for plaintiff.

Allan L. Sullivan, Salt Lake City, for amicus curiae.

David L. Wilkinson, Atty. Gen., A. Wally Sandack and Roger D. Sandack, Sp. Asst. Attys. Gen., Salt Lake City, for defendants.

HALL, Chief Justice:

This case is before us on certiorari to the Tax Commission of the State of Utah to review the decision of the Commission that a condominium office building used to house the activities of a number of labor unions is exempt from taxation. We vacate and set aside the decision of the Commission.

In 1977, defendant labor unions together completed construction of the subject condominium office building in Salt Lake County in which to carry out their union activities. Beginning in 1978, Salt Lake County assessed an ad valorem property tax on the condominium property. Each of the defendant unions applied for exemption for the year 1978 with regard to the building space owned by its organization, and each was denied tax exempt status by the County Board of Equalization. The defendant unions thereupon individually appealed to the Commission. All appeals were consolidated for formal hearing before the Commission on November 26 and 27, 1979.

The evidence presented at the formal hearing established that the property in question consists of a two-story structure erected on approximately four acres of land at 2261 South Redwood Road, built for the exclusive use of unions. The defendant Salt Lake Labor Temple Association (SLLTA) owns a large meeting hall upstairs and a smaller meeting hall downstairs which comprise 17.35% of the total building space. The local unions use the meeting halls for their regular monthly or weekly meetings. When not used by labor organizations, the meeting halls are donated or rented for nominal amounts to organizations and to churches, state agencies, local citizens councils, retiree groups, junior bowling associations, fraternal organizations and other charitable entities. Rental income derived from use of the meeting halls is used to offset expenditures; the SLLTA pays no salaries except for direct janitorial expense and takes no depreciation expense.

The remainder of the building is comprised of the various union offices. While the offices do vary, they generally have a waiting area, a business office, secretarial space and space for the storage of records. The offices are not generally used by any organization other than the labor organizations which own them. Most of the funds used to run the offices come from dues levied upon the members and initiation fees.

The SLLTA and other labor organizations, before constructing the property in question, occupied another building in Salt Lake County on which they paid no property tax.

The Commission found that the defendant unions' use of the property is to provide office space for the conduct of activities determined to be charitable including educational activities, welfare activities, employee representation and other traditionally charitable uses. The Commission further found that defendant unions performed the following functions: job placement, contract negotiation, arbitration, counseling and assistance with applications for governmental benefits, apprenticeship training, liaison for government programs and promotion of employee health and safety.

The Utah Constitution, Article XIII, § 2 provides in part:

All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed.... [L]ots with buildings thereon used exclusively for either religious worship or charitable purposes ... shall be exempt from taxation.

The Commission based its ruling on language contained in U.C.A., 1953, § 59–2–30 and –31, which apply the foregoing constitutional provisions to property used exclusively for "employee representation." Since the enactment of §§ 59–2–30 and –31 in 1973, respondent labor organizations have described their activities as "employee representation" in applying for tax exemptions and have received such exemptions without any additional showing of charitable use.

Section 59–2–30 reads as follows:

This section is intended to clarify the scope of exemptions for property used exclusively for either religious worship or charitable purposes provided for in section 2 of Article XIII of the Constitution of the state of Utah. This section is not intended to expand or limit the scope of such exemptions. Any property whose use is dedicated to religious worship or charitable purposes including property

which is incidental to and reasonably necessary for the accomplishment of such religious worship or charitable purposes, intended to benefit an indefinite number of persons is exempt from taxation if all of the following requirements [not at issue in the instant case] are met: ....

Section 59–2–31(1) reads as follows:

Property used exclusively for religious, hospital, educational, employee representation, or welfare purposes which use complies with the requirements of section 59–2–30, shall be deemed to be used for charitable purposes within the exemption provided for in section 2 of Article XIII of the Constitution of the state of Utah, and section 59–2–30.

The decision of this Court in the recent case of *In the Matter of Loyal Order of Moose, # 259 v. County Board of Equalization of Salt Lake County,* Utah, 657 P.2d 257 (1982), bears directly upon the issue presented in the instant case. In *Moose,* we determined that the constitutional provision which exempts property "used exclusively for ... charitable purposes" from taxation is to be *strictly* construed, and that statutes cannot expand, limit or defeat the scope of the constitutional exemption. To the extent §§ 59–2–30 and –31, *supra,* do so, they were declared invalid.

The holding in *Moose* abandons the "dominant" or "primary" charitable use standard in favor of the standard enunciated in *Parker v. Quinn,* 23 Utah 332, 64 P. 961 (1901):

The constitutional exemption is to be strictly construed and the charitable use of the property must be exclusive; however, a use of true minor import or a de minimus use will not defeat exemption. If there is any separate part of the building occupied and used exclusively for charitable purpose, that part qualifies for exemption.

In the instant case, we must determine whether defendant unions' use of their building is charitable when viewed in the light of the foregoing standard.

■ Charity is judicially defined as follows:

[T]he contribution or dedication of something of value ... to *the common good,* ... individual or group sacrifice for the welfare of *the community.* [Emphasis added.]

*Salt Lake County v. Tax Commission ex rel. Greater Salt Lake Recreational Facilities,* Utah, 596 P.2d 641 (1979).

[A]ctivities ... rendered for the general improvement and betterment of *mankind* ... [which] benefit *the community as a whole or an unascertainable and indefinite portion thereof.* [Emphasis added.]

*B.P.O.E. No. 85 v. Tax Commission,* Utah, 536 P.2d 1214 (1975). Defendant unions concede that their activities primarily benefit union members—in some cases at the expense of other segments of society—although they may result in some incidental benefits to other workers as well.

Of the seven activities in which the Commission found defendant unions to be engaged, only two, apprenticeship training and job referral, include any individualized service to workers outside the unions. The apprenticeship program, although it appears to benefit nonunion as well as union workers, cannot be classified as charitable because it is entirely funded through a combination of federal grants and tuition paid by the apprentices themselves, rather than through the union or its members. Thus, of the activities to which these organizations devote their own resources, only one, job referral, can be said to include the element of "sacrifice for the welfare of the community."

Defendant unions offered no evidence to show what percentage of the time and effort expended by union workers is directed toward job placement for individuals who are not union members. They have not shown that their organizations offer to nonmembers any placement or other services other than those required by federal and state labor laws. They do not claim that job referral or any other community service constitutes the primary purpose of their organization, much less that such is the exclusive use of their property. Their activities are therefore rendered primarily on behalf of union members and their families.

In *Friendship Manor Corp. v. Tax Commission*, 26 Utah 2d 227, 487 P.2d 1272 (1971), this Court declined to exempt from taxation property used as a home for the elderly. The Court held that the property was not used for charitable purposes because the money used to provide benefits to the residents came from the residents themselves. Because the alleged givers of charity constituted its sole beneficiaries, the Court was unable to find any "gift to the general public use."[1] Quoting the Colorado Supreme Court, the Court in *Friendship Manor* observed: "Where material reciprocity between alleged recipients and their alleged donor exists—then charity does not." 487 P.2d 1272, 1279, quoting from *United Presbyterian Association v. Board of County Commissioners*, 167 Colo. 485, 448 P.2d 967 (1968).

The evidence presented by defendant unions shows that the primary purpose for their existence is to benefit union members. The Articles of Incorporation of the SLLTA list as its purposes:

> The advancement of the interest of labor, to promote the welfare of the members of the SALT LAKE LABOR TEMPLE ASSOCIATION, to consider and deal by all lawful means with problems of its members. To secure cooperative action in advancing common purposes of the members of the Association.

Statements of purpose in the constitutions, by-laws and articles of incorporation of the other union organizations are similar, although some make mention of unspecified charitable aims in addition to the above. The Laborers' Local # 295 Building Association, which aspires in its International Union Constitution "to improve the conditions of life of the laboring peoples of all countries," expresses in the same section its more concrete philosophy of "supporting our friends and defeating our enemies." International Union Constitution, Article II, Sections 1(k), 1(o). According to documents in evidence which list the particular activities to be conducted by these unions, such activities are carried out for the benefit of union members. While some of the listed activities may result in indirect benefits to society, all are undeniably directed towards promotion of particularly union interests.

Defendant unions appear to claim that a mere showing that they are engaged in employee representation entitles them to a charitable tax exemption. This claim finds no support in statutory or case law. As noted earlier in this opinion, § 59–2–31 does not grant an automatic tax exemption on property used for employee representation. Rather, it expressly requires as a condition to exemption that such use be shown to conform to the § 59–2–30 definition of "exclusively . . . charitable." We have not discovered any cases which support the proposition that employee representation is in itself a charitable activity. On the contrary, courts have consistently declined to define the typical activities of labor unions as charitable.

In *Rubber Workers Local 845 v. Lee County Board of Supervisors*, Miss., 369 So.2d 497 (1979), the plaintiff union sought property tax exemption as a "fraternal and benevolent" organization. In addition to activities similar to those of the unions in the instant case, plaintiff performed "other salutory functions" such as "assisting with alcoholism and health problems of people of the community." However, the Mississippi Supreme Court there cited an earlier case, *Johnson v. Sparkman*, 159 Fla. 276, 31 So.2d 863 (1947), to show that "such incidental contributions were not dispositive," observing:

> In a similar manner, Local 845 participates to some extent in laudable charitable causes, but primarily the union seeks higher wages with better fringe benefits and working conditions.

Because the primary purpose of the union was to promote the interests of its members, the Mississippi court denied its request for exemption.

In *Johnson v. Sparkman*, the Florida case cited by the Mississippi court, the plaintiff organization conducted classes in various

---

1. See *William Budge Memorial Hospital v. Maughan*, 79 Utah 516, 3 P.2d 258 (1931).

trades and crafts, as well as lectures on economics, citizenship, social problems, unemployment compensation, labor laws and other subjects, for all interested persons. Similarly, in *Workmen's Circle Educational Center of Springfield, Inc. v. Board of Assessors of Springfield,* 314 Mass. 616, 51 N.E.2d 313 (1943), the plaintiff offered children's classes and frequent public lectures and forums without charge. Such activities were found insufficient in both cases to prove that the purposes of the unions involved were primarily charitable. As stated by the Colorado Supreme Court in *Lane v. Wilson,* 103 Colo. 99, 83 P.2d 331, 332 (1938):

> We acknowledge the great debt that America owes to the labor movement. The history of trade unionism is full of examples of men and women who have spent their lives in unselfish service to improve the lot of working people. But in the case at hand, while commending the noble and laudable work performed by plaintiff in error, and similar groups, it must be remembered that there is always the "quid pro quo" for help and relief that is meted out. It must be conceded, we think, that the distinction the law makes in these cases is that announced by St. Paul in beautiful brevity (I Cor. 13:5) when he said: "Charity seeketh not her own."
>
> [W]e still adhere to the distinction between a charity, and "a beneficial society whose beneficence is confined to the members, their families, dependents or friends, and depends upon ... contributions ..." not voluntarily given, but assessed against the members. Such an organization we have described as "not a charity, but a private institution for the mutual advantage of members." [Citations omitted.]

The Supreme Court of Tennessee, in *La-Manna v. Electrical Workers Local 474,* Tenn., 518 S.W.2d 348 (1974), refused to classify a union engaged in job training programs, Boy Scout sponsorship and health and welfare activities as charitable because "its educational activities [were] more or less incidental to its primary purposes of promoting the general welfare and financial interests of its members." That court observed:

> [M]ost of the other appellate courts of the nation have rejected the contention that a union hall is an educational institution, or charitable institution, so as to be entitled to exemption within the meaning of the various state statutes.

In *County Assessor, Oklahoma County v. Carpenters Local 329,* 202 Okl. 162, 211 P.2d 790 (1949), the Supreme Court of Oklahoma stated:

> That the Union is not entitled to exemption of the property on the basis of its being a charitable institution we deem to be too obvious to require discussion.

Defendant unions have failed to show that the employee representation in which they are engaged constitutes a charitable purpose as is defined and exempted from taxation by the Constitution of Utah.

■ The decision of the Commission is vacated and set aside and this matter is remanded for the purpose of directing the assessor of Salt Lake County to enter the subject property on the tax rolls. However, the Salt Lake Labor Temple Association has in years past been afforded an exemption from taxation on its meeting halls, ostensibly on the basis of the no-longer-applicable "dominant" or "primary" use standard. Therefore, consistent with the holding in *Moose, supra,* our ruling in this case is to be given prospective application to the Association's meeting hall space, which comprises 17.35% of the condominium building, and that portion of the building is not to be placed on the tax rolls until January, 1983.

No costs awarded.

STEWART and HOWE, JJ., and J. HARLAN BURNS, District Judge, concur.

OAKS, Justice (concurring):

I concur in the opinion of the Court.

This additional opinion will only elaborate on the question of what constitutes "charitable purposes" under Article XIII, § 2 of our Constitution and under U.C.A., 1953,

§§ 59–2–30 and –31. Such elaboration is timely, since our recent insistence that a post-January 1, 1983, tax exemption be limited to circumstances where the property is "used exclusively for either religious worship or charitable purposes," *In the Matter of Loyal Order of Moose, # 259 v. County Board of Equalization,* Utah, 657 P.2d 257 (1982), will make determination of what is "charitable" much more critical than it was under the prior practice of permitting exemption when property was only "primarily" so used.

In resolving any controversy over the meaning of "charitable purposes," we cannot be unaware of the impact of charitable exemptions on taxpayers who must thereby bear an increased burden of funding the revenue needs of government. But neither can we be unresponsive to the enormous benefit conferred on the public by charitable activities. Consequently, the courts must be careful to preserve the tax exemption the Constitution mandates for property used for "religious worship or charitable purposes," but also vigilant to assure that this exemption is not extended beyond the limits established for it.

Section 59–2–30 establishes four requirements that must be met if property is to be exempt from taxation. Those requirements are *necessary* for exemption, but they are not *sufficient.* Exempt property must still be "used exclusively for either religious worship or charitable purposes" within the meaning of the Constitution.

Our decisions have established several ground rules that are helpful in determining whether property is used for "charitable purposes."

*First,* the test of charitable purpose is public benefit, or, as it is sometimes expressed, contribution to the common good or the public welfare. *Salt Lake County v. Tax Commission ex rel. Greater Salt Lake Recreational Facilities,* Utah, 596 P.2d 641,

643 (1979); *Youth Tennis Foundation v. Tax Commission,* Utah, 554 P.2d 220, 221, 223 (1976). Justice Traynor's definition is classic: "If the benefit conferred has a sufficiently widespread social value, a charitable purpose exists." *In re Henderson's Estate,* 17 Cal.2d 853, 857, 112 P.2d 605, 607 (1941). What qualifies under this standard is "subject to judgment in the light of changing community mores." *Greater Salt Lake Recreational Facilities,* 596 P.2d at 643. The public benefit standard is based on the conclusion that the public will receive benefits from the use of the property for charitable purposes "equivalent at least to the public revenue that would otherwise be derived from it." *Salt Lake Lodge No. 85, B.P.O.E. v. Groesbeck,* 40 Utah 1, 8, 120 P. 192, 194 (1911), overruled on another point in *Matter of Loyal Order of Moose, # 259, supra.*

The benefiting of an indefinite number of persons is not an essential element of charitable purpose at common law. Even the benefiting of a limited and identifiable class can be charitable if that result is also beneficial to the public. *Restatement (Second) of Trusts* § 368, 375 comments a, c, g, h, and j (1959); G. Bogert, *The Law of Trusts & Trustees* § 362, pp. 4–15, § 365, p. 28 (rev. 2d ed. 1977); 4 A. Scott, *The Law of Trusts* § 375.2 (3d ed. 1967); *In re Henderson's Estate,* 17 Cal.2d at 861–62, 112 P.2d at 609–10; Dwan, "Charities for Definite Persons," 82 *U.Pa.L.Rev.* 12 (1933).

Section 59–2–30's reference to "intended to benefit an indefinite number of persons" does not impose that qualification as a requirement for all charitable exemptions. This "indefinite number" qualification modifies the word "property" in the immediately preceding "including" phrase, not the earlier use of "property" as the subject of the sentence. Under this construction, which obviates serious doubts about the constitutionality of this phrase,[1] the re-

1. If the reference to benefiting an indefinite number was construed as a requirement for all charitable exemptions, this would significantly narrow the exemption mandated in Article XIII, § 2 of our Constitution, since there was no such requirement at common law. Authorities cited earlier. Such narrowing would be contrary to the declaration in the second sentence of § 59–2–30 that it is not intended to limit the scope of charitable exemptions. More impor-

quirement of "indefinite number" only limits the circumstances in which property "incidental to" the accomplishment of religious and charitable purposes qualifies for exemption.[2] Consequently, the preamble to the four requirements in § 59–2–30 is properly read as follows: "Any property whose use is dedicated to religious worship or charitable purposes . . . is exempt from taxation if all of the following requirements are met: . . . ."

*Second,* we have decisively rejected the contention that all nonprofit corporations are entitled to a charitable exemption for purposes of our property tax. Nonprofit character and use is *necessary,* § 59–2–30; *William Budge Memorial Hospital v. Maughan,* 79 Utah 516, 3 P.2d 258 (1931), but it is not *sufficient. Friendship Manor Corp. v. Tax Commission,* 26 Utah 2d 227, 239, 487 P.2d 1272, 1280 (1971); *Greater Salt Lake Recreational Facilities,* 596 P.2d at 644. As we said in the latter case,

> It is not within the constitutional purview that tax exemption be granted merely because a "non-profit" corporation is interposed between an entrepreneur and his customers even though the activity to which the enterprise is oriented is physically, mentally, or spiritually uplifting.

*Third,* for a use to qualify as a "charitable purpose," it must also include the element of gift that is at odds with the exchange of equivalents identified in the idea of "reciprocity." See the discussion in the majority opinion. Thus, in *Greater Salt Lake Recreational Facilities, supra,* we declared:

> By exempting property used for charitable purposes, the constitutional convention sought to encourage individual or group sacrifice for the welfare of the community. An essential element of charity is an act of giving.

tantly, such narrowing would violate the principle that our tax legislation cannot validly limit the scope of the exemption in the Constitution. *Matter of Loyal Order of Moose, # 259, supra.*

**2.** This construction also minimizes the scope of the expansion of charitable purposes involved

596 P.2d at 643. A gift or sacrifice for the welfare of the community can be identified either from a substantial imbalance in the exchanges between the charitable organization and recipient (*i.e.,* the absence of reciprocity) or in the fact that the burdens of government are substantially lessened as a result of the use of the property.

There are ample illustrations of the denial of charitable exemption where there was "reciprocity" in the alleged charity's transactions with its recipients. In *Friendship Manor Corp. v. Tax Commission, supra,* the member-tenants all paid the same rent and received essentially the same benefits. Moreover, what they were receiving—private housing—was a service not provided by government, so the public burden was not lessened by the provision of these services by a non-profit organization. The same is true of the remunerated recreational, research, and social services involved in *Eyring Research Institute, Inc. v. Tax Commission,* Utah, 598 P.2d 1348 (1979), and *Baker v. One Piece of Improved Real Property,* Utah, 570 P.2d 1023 (1977). In such circumstances, this Court has referred approvingly to the statement that "[w]here material reciprocity between alleged recipients and their alleged donor exists—then charity does not." *Friendship Manor Corp., supra,* 26 Utah 2d at 238, 487 P.2d at 1279. Applying that principle to the facts of that case, the Court concluded: "Where the senior citizen is paying for all of the services he receives . . . no charitable purpose is involved." 26 Utah 2d at 239, 487 P.2d at 1280.

However, the mere fact that recipients pay something to receive a charitable organization's bounty, such as contributions to the organization or outright payments for services (such as patient charges, student tuitions, or museum admissions), does not disqualify an activity from charitable

in the "incidental to" phrase, about which this Court has already expressed constitutional doubts. *Salt Lake County v. Tax Commission ex rel. Good Shepherd Lutheran Church,* Utah, 548 P.2d 630, 631 (1976).

status under the test of reciprocity, provided the total nature of the exchange is such that one can identify a clear gift to the recipient. Thus, there is no disqualification for reciprocity where persons who pay the same amount receive significantly different services for their payments. Otherwise, there would be substantial doubt about the exempt status of acknowledged charitable activities whose benefits are conferred exclusively or primarily upon contributing or dues-paying members, such as the welfare activities of churches or the rest homes of fraternal organizations. Similarly, there is no disqualification for reciprocity where persons making the same payments receive the same services, provided the organization is so funded (such as by a significant endowment) or conducted (such as by extensive use of volunteers) that all recipients of its services receive measurably more than they pay.

In the alternative, a use of property may also satisfy the gift test where the activity is one that government would otherwise provide to these same recipients, so that its provision on a private, nonprofit basis confers a public benefit by substantially lessening the burdens of government. *Cf. Youth Tennis Foundation,* 554 P.2d at 221–22 ("the justification for tax exemption is to give encouragement and support to those who assist in discharging those [government] responsibilities"); *William Budge Memorial Hospital,* 79 Utah at 521, 528–29, 3 P.2d at 260, 263.

For the reasons explained in the majority opinion, the activities carried on in the various union offices in the building involved in this case do not qualify for the charitable exemption because they fail under this third test. The organization's concentration on promoting the financial and other specific interests of its dues-paying members is such that its activities do not include the essential element of gift.

DURHAM, J., does not participate herein.

BURNS, District Judge, sat.