## In re LOEB. (No. 7142.)

(Supreme Court, Appellate Division, First Department. April 23, 1915.)

1. CHARITIES ⬥7—CHARACTER OF CHARITABLE CORPORATION.

    To determine the status and character of a corporation as charitable, recourse must be had to its charter.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. § 17; Dec. Dig. ⬥7.]

2. TAXATION ⬥876—TRANSFER TAX—EXEMPTION—LEGACY TO CHARITABLE CORPORATION—STATUTES—"CHARITABLE INSTITUTION"—"BENEVOLENT INSTITUTION."

    Under Transfer Tax Law (Consol. Laws, c. 60) § 221, as amended by Laws 1912, c. 206, providing that property devised to any charitable corporation shall be exempt from the transfer tax, a corporation organized to maintain a building in which Hebrew benevolent institutions might have their headquarters, to which all applicants for aid might apply, and to establish in such building a public library, such building to contain the offices of the United Hebrew Charities and other charitable institutions, and to provide for the maintenance of such library and any such societies, and for charitable work in connection therewith, any excess income derived from the building not necessarily used by the United Hebrew Charities to be devoted to the charitable work declared in the charter, was a "charitable" or "benevolent institution," within the exemption from the transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. ⬥876.

    For other definitions, see Words and Phrases, First and Second Series, Charitable Institution; Benevolent Institution.]

Appeal from Surrogate's Court, New York County.

In the matter of Morris Loeb, deceased. From an order of the Surrogate's Court, assessing a transfer tax on a legacy to the Hebrew Charities Building, said legatee and the executors appeal. Modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Walter H. Pollak, of New York City, for appellants.
Alexander Otis, of New York City, for respondent.

SCOTT, J. The executors of Morris Loeb, deceased, and the Hebrew Charities Building, a corporation and legatee named in the will of said Morris Loeb, appeal from an order assessing a transfer tax upon the legacy given to said corporation. The testator died on December 8, 1912, and the legacy is assessed at its value on that date. The exemption is claimed under section 221 of the Transfer Tax Law as it stood at the date of the death of the testator (chapter 206, Laws 1912). The section then provided that:

"Any property devised or bequeathed * * * to any * * * charitable * * * benevolent corporation * * * shall be exempted from and not subject to the provisions of this article."

[1] The question therefore is whether or not the Hebrew Charities Building is a charitable or benevolent corporation. To determine the status and character of the corporation recourse must be had to its

charter. Matter of White, 118 App. Div. 869, 103 N. Y. Supp. 688, Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443.

[2] The corporation was organized under a special act of the Legislature known as chapter 96, Laws of 1898. By the first section of this act the corporation seems to be recognized as a charitable and benevolent one, because the amount of the property which it may receive by deed, devise, or otherwise is limited so that it "shall not exceed in value the amount which a benevolent and charitable corporation is now authorized to take and hold under the general laws of this state." The second section of the act declares the purposes of the corporation as follows:

"Sec. 2. The objects of this corporation shall be to erect, establish and maintain a building in the city and county of New York in which Hebrew benevolent institutions can have their headquarters, and to which all applicants for aid may apply; and to establish in said building a public library with a special department in Judaica; such building to contain the general offices of the United Hebrew Charities in the city of New York and of other charitable and benevolent institutions; and to provide for the maintenance of such library and any such societies and for charitable and benevolent work in connection therewith."

The third section provides for the government of the corporation, and the fourth section, after subjecting the corporation to the provisions of the General Corporation Law, and exempting its real and personal property from state and local taxation, disposes of its surplus income as follows:

"Provided that as to all of said building not necessarily used by the United Hebrew Charities, the income derived therefrom shall be devoted to the benevolent and charitable purposes declared in this act."

We have no doubt that the purposes for which this corporation was organized bring it within the definitions both of charitable and benevolent institutions. While it may not actually dispense charity itself, its purpose is to afford a central home for charitable Hebrew societies and thus facilitate and co-operate in the active charitable work carried on by those societies. It would seem to be idle to argue at length so obvious a proposition. The learned surrogate who made the order appealed from was actuated, as his opinion indicates, by an apprehension that the corporation might in some way use its property and income for other than strictly charitable purposes. There is no proof or suggestion in the record that it now misapplies its property or income, and to do so would obviously be to violate the terms of its charter. We certainly are not bound to assume that the corporation and its managers will be guilty of such a breach of trust. The uncontradicted evidence in the case shows that:

"The said corporation conducts the work for which it was organized by renting at nominal rentals, to charitable corporations and associations, the premises owned and erected by it in the city of New York, known as the 'Hebrew Charities Building,' and by appropriating to the use of the United Hebrew Charities, a charitable corporation, as permitted by the charter of this corporation, any excess from such rentals over and above the actual expenses of maintaining said Hebrew Charities Building. That no officer, member, or employé of said corporation receives, or is lawfully entitled to receive, any pecuniary profit from the operations of said corporation, except reasonable compensation for services in effecting one or more of the purposes of

said corporation, and that said corporation is not organized or conducted for the purpose of making, directly or indirectly, any pecuniary profit for such corporation, its officers, or members."

We are therefore of the opinion that the character of the corporation as judged by its charter is both "charitable" and "benevolent,"' that there is no evidence to show that this character has been assumed as a cloak for ulterior designs, and that there is no legal or reasonable· ground for assuming that the corporation will in the future abandon its charitable and benevolent purposes, and turn its property and funds. into a means for acquiring private and noncharitable gains.

It follows that it is entitled to the exemption claimed, and that the order, in so far as appealed from, must be so modified as to exempt the legacy in question from payment of the transfer tax. Settle order on notice. All concur.

---

### In re NEW YORK LIFE INS. & TRUST CO.

### In re SMITH'S ESTATE.

(Supreme Court, Appellate Division, Second Department. April 16, 1915.)

WILLS ⬳3—GIFTS TO CHARITABLE CORPORATIONS—CAPACITY OF CORPORA-
TIONS TO TAKE—STATUTES.

A charitable corporation incorporated under Laws 1841, c. 118, made-subject to Laws 1860, c. 360, by Laws 1864, c. 57, amending the original charter, has legal capacity to take a legacy, for the amendment did not by implication make it subject to Laws 1848, c. 319, restricting the capacity of corporations to take testamentary gifts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 3; Dec. Dig. ⬳3.]

Appeal from Surrogate's Court, Rockland County.