## WILLIAM BUDGE MEMORIAL HOSPITAL v. MAUGHAN, County Treasurer.

No. 4925. Decided October 2, 1931. (3 Pac. [2d] 258.)
Rehearing denied July 23, 1932. (13 P. [2d] 1119.)

*Leon Fonnesbeck* and *Geo. D. Preston,* both of Logan, for appellant.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

The plaintiff brought this action to enjoin the defendant, E. N. Maughan, as the county treasurer of Cache county, from collecting the taxes for the year 1928 which were assessed and levied on the real estate and the building thereon owned and occupied by the plaintiff. The real estate and the buildings so taxed were essential to and used exclusively by the plaintiff in the operation of the William Budge Memorial Hospital and the nurses' home which the plaintiff has constructed since its incorporation for use in connection with the hospital for the education and training of the nurses who were employed in its service.

The injunction was sought on the theory that the property was used exclusively for charitable purposes during the year 1928 and it was therefore exempt from taxation. That all of the property was exclusively used as above stated and was essential thereto is not denied; but that such a use, taken in connection with the facts of this case, is a charitable purpose, so as to exempt the property from taxation, is strenuously disputed.

On the hearing of the cause the court found that during the year 1928 the property "was used exclusively for charitable purposes"; and therefrom drew the legal conclusion that the "property of the plaintiff and the whole thereof, was exempt from taxation during the year 1928," and that the levy of the tax against said property was without authority and contrary to law. It thereupon entered its decree permanently restraining and enjoining the defendant "and all persons acting in aid or assistance of him" from collecting the tax here in question.

From the judgment the defendant appeals and assigns as error the action of the court in making the foregoing finding of fact; in making its foregoing conclusion of law; and in entering judgment for the plaintiff, without any evidence in support thereof and contrary to the undisputed evidence in the case.

The controlling facts are not in dispute. The plaintiff was incorporated under the general corporation laws of Utah on April 29, 1914, in the name of the Budge Hospital, after the manner of business corporations which are organized for profit and gain, and not, we here note, under other provisions of the incorporation law which authorize societies and associations to incorporate for purposes other than pecuniary profit.

The purpose of the corporation as outlined in its articles was to build, operate, and maintain a hospital in Logan City, Utah, and in such other places as the board of directors might determine, for the care and treatment of persons suffering from ailments, except such diseases as may be excluded by the by-laws of the institution. To carry on this

purpose it has by express provision of its charter the usual rights to acquire and hold property of any kind deemed necessary or appropriate, and the related rights to sell and dispose of its property, privileges, and franchises; to borrow money and incur indebtedness. The articles provided for a board of directors and designated and named the members thereof who were to so act until the election therein provided.

Plaintiff was incorporated with an authorized capital stock of $35,000, divided into shares of $10 each. The original articles of incorporation show that of the capital stock 2,560⅝ shares were subscribed by eight-two persons, thereby affording the corporation a capital of $25,606.25 with which to commence business. December 5, 1914, the articles of incorporation were amended so as to increase the capital stock to $50,000, divided into shares of the same par value. On April 8, 1915, the articles of incorporation were again amended whereby the name of the corporation was changed to Utah Idaho Hospital. The hospital was carried on and did business at Logan, Utah, under the name of the Utah Idaho Hospital until some time in February, 1927, when by amendment to its articles of incorporation the name was changed to the William Budge Memorial Hospital, under which name the hospital has since been carried on and the business thereof transacted. The operation and maintenance of the hospital, together with the nurses' home operated in connection with the hospital, is the sole and exclusive business of the plaintiff. As we have already stated, the property on which the taxes were levied consisted of a lot approximately eight by fifteen rods in Logan City and the buildings thereon. The main building is a three-story structure, one hundred feet long and forty feet wide, and the nurses' home, which is also a three-story building eighty feet long and forty feet wide. There are fifty beds in the hospital. The rates charged per day to patients are $2.50 in a ward; $2.75 or $3.25 (both amounts are given by Dr. D. C. Budge) when there are two patients in a ward; $4 for a private room, except in two rooms for each of which a charge of $5 is

made. There is an additional charge of $10 for the operating table and room, and charges are also made for the X-ray and for laboratory fees.

The policy of the hospital in respect to the charges made for the services and accommodations furnished its patients was to collect in all cases when that was possible. It did not receive any patient as a strictly charity case without expectation of reward. Dr. D. C. Budge, the medical director and chief of staff, and who has been such from the organization of the hospital, testified that the hospital aimed to collect its regular charges in all cases, as near as it can; that is its only support. The superintendent of the hospital testified that the charges made were the standard hospital charges, and that since his connection with the hospital (July, 1928) no patient had been received in the hospital against whom there was no charge entered on the books of the hospital, except members of the hospital staff and their immediate families. (By rule of the hospital, members of the staff and their dependents are received free of charge.) During the trial, counsel for plaintiff, in requesting a ruling from the court excluding certain proffered testimony, fairly stated the policy of the plaintiff in respect to charging for the services, care, and treatment rendered to indigent patients as follows:

"We will admit that we collected all the fees that they were able to pay and that we collected all we can, and that the hospital uses its best endeavors to collect its charges."

Dr. D. C. Budge in this connection stated that there had been no change in that policy at any time.

Operating under that policy the plaintiff had on hand in 1927 an undivided profit of $31,000, in addition to wiping out a debt of $10,000 incurred in constructing and equipping the main building. Up to this time there is no claim that it received any gifts, bequests, or endowments, either absolutely or impressed with any kind of a trust, to be used for the construction, support, and maintenance of this or any other hospital. It had nothing more than what

was paid in by its stockholders for the payment of their stock, which, so far as the record shows, was $40,240. The $31,000 undivided profits was appropriated for building a nurses' home. This fund was added to by a straight-out gift of $5,000 made by Dr. D. C. Budge and Dr. T. B. Budge. This seems to have been done as a mark of appreciation for the action taken by the corporation in changing its name to the William Budge Memorial Hospital in honor of the deceased father of the donors. Although the building and equipment cost approximately $60,000, the plaintiff's indebtedness was at the time of the trial only $8,000. No dividends were ever declared or paid to the stockholders.

While we do not consider the evidence of controlling importance, it appears from the plaintiff's statement as to its profits and losses for the year 1927 that its net profit for that year was $1,475.28, and the net profit for the year 1928 was shown to be $5,056.57. Taxes were paid by the plaintiff in 1927 and all preceding years.

The Constitution of this state, article 13, § 2, in part provides:

"* * * Lots with the buildings thereon used exclusively for * * * charitable purposes * * * shall be exempt from taxation."

Const. as amended in 1930 (see Laws 1930, Sp. Sess. p. 21), Comp. Laws Utah 1917, § 5863, contains the same provision. It is under the foregoing provisions that plaintiff claims that the property in question is exempt from taxation.

It conclusively appears that the real estate and the buildings on which the taxes in question were assessed were used exclusively in and were essential to the operation and conduct of the William Budge Memorial Hospital. The nature and character of the use of such property would, under the facts of this case, be identical with the nature and character of the hospital. It necessarily follows that if the hospital is a charitable institution the property was used exclusively for charitable purposes, hence exempt from taxation; and, contrariwise, if the hospital is a business enterprise, the

property is, of course, not used either exclusively or at all, for charitable purposes, and, therefore, not exempt from taxation.

The real question here, therefore, resolves itself into this: Is the William Budge Memorial Hospital a charitable organization?

The test which determines whether a hospital is charitable or otherwise is its purpose, that is, whether it is maintained for gain, profit, advantage, or not. 30 C. J. 462; *Union Pac. R. Co.* v. *Artist* (C. C. A) 60 F. 365, 23 L. R. A. 581. The question whether a hospital is maintained ▬ for the purpose of charity or for profit is to be determined, in case the hospital is incorporated, not only from its powers as defined in its charter, but also from the manner in which it is conducted. 30 C. J. 462, *Stewart* v. *Cal. Med. M. & B. Ass'n*, 178 Cal. 418, 176 P. 46; *Bishop, etc., of St. John the Evangelist* v. *Treasurer, etc.*, 37 Colo. 378, 86 P. 1021. But the corporation itself is concluded by the declaration of its charter in respect to its purpose and object. *Gitzhoffen* v. *Sisters of Holy Cross Hosp. Ass'n*, 32 Utah 46, 88 P. 691, 695, 8 L. R. A. (N. S.) 1161; 11 C. J. 304; In re *Loeb*, 167 App. Div. 588, 152 N. Y. S. 879; In re *Altman's Estate*, 87 Misc. Rep. 255, 149 N. Y. S. 601, page 604.

The case of *Gitzhoffen* v. *Sisters of the Holy Cross Ass'n*, supra, was an action to recover for injuries sustained because of the negligence of the defendant's nurses. The defendant, over plaintiff's exception, in order to restrict its liability, was permitted in the trial court to show by extrinsic evidence that the defendant was a charitable institution when in fact the articles of incorporation showed that it was organized for gain and profit. In passing on this assignment this court, after reviewing a great many authorities, said:

"The articles upon their face purport to create an organization for pecuniary profit. It has been quite generally held that the nature of the corporation must be determined from its articles of association, and that its character cannot be changed or modified by parol evi-

dence; that the object and purpose for which a corporation is organized must be gathered alone from the written instrument, and it cannot be aided or varied or contradicted by testimony or averments aliunde the instrument itself. [Citing cases.] * * * We are not concerned with the question whether a stranger to the corporation may show the real character of the association by evidence aliunde the articles. The only question in this respect before us and decided by us is that a corporation itself may not do so. We are therefore of the opinion that the court erred in admitting the testimony referred to."

We think the decision in *Gitzhoffen* v. *Sisters of the Holy Cross Hosp. Ass'n,* supra, is controlling upon the question before us in the present case. Counsel for plaintiff, however, in an attempt to differentiate it, asserts that in that case:

"It was not a question as to the character of the use of its property, but simply a question of the classification into which the institution should be placed from a reading of its articles, so as to determine the rule of liability as to negligence."

We candidly confess that, upon the facts in the case, we are unable to appreciate the force, if any, in such statement. The reason, or the rule of evidence, which moved the court to classify the hospital in the Gitzhoffen Case as an organization for pecuniary profit would, likewise, in the present case, on the same facts, be controlling in determining the nature and character of the hospital here in question. Further, we have already adverted to the fact that the property assessed for the taxes in question was essential to and used exclusively by the plaintiff in the operation and conduct of its hospital. Except for the furniture and equipment, the buildings and lot on which they stand constitute the whole of the property used in connection with the hospital. The wards, the laboratories, the operating room, the kitchen, the nurses' home, and in fact all the activities of the hospital, are contained in these buildings. In addition, the lot and buildings were owned by the plaintiff.

The question as to whether such use of the property was charitable or was for pecuniary profit must in the very nature of things, upon the facts herein, be determined and controlled by the purpose of the hospital.

The mere fact that the property is used for hospital purposes is not sufficient to exempt it from taxation, as all hospitals are not charitable institutions. They may be and often are maintained and conducted for pecuniary profit. The fact that the declared purpose for establishing this hospital was for the care and treatment of the sick and injured is not itself controlling, for this may be and frequently is done for profit. The plaintiff was incorporated after the manner of the usual business corporations for the purpose of establishing a hospital at Logan. In pursuance of this purpose the William Budge Memorial Hospital was established. True, the name of the hospital was changed corresponding to changes in the name of the corporation which was done on two occasions by amendment to the articles of incorporation. The articles of incorporation upon their face purport to create an organization for pecuniary profit. By applying the rule of the Gitzhoffen Case, to the effect that a corporation organized as a business corporation to establish and conduct a hospital cannot by extrinsic evidence show itself to be a charitable institution, to the facts of the present case, the status of the William Budge Memorial Hospital is conclusively fixed as an enterprise for pecuniary profit. Therefore the conclusion is inescapable that the property is not exempt from taxation.

We might properly conclude this opinion at this point, were it not for the fact that plaintiff has raised two questions on which it seems to place considerable confidence, which ought to be given mention in the course of the opinion, lest it be thought that we have overlooked them entirely. Counsel for plaintiff refer to *Parker* v. *Quinn*, 23 Utah 332, 64 P. 961, and *Odd Fellows,' etc.*, v. *Naylor*, 53 Utah 111, 177 P. 214. In each of these cases the building which was the sub-

ject of the tax in question was owned by an incorporated charitable organization. In each case it was shown that a part of the building was leased to tenants and the other part occupied by the corporation for its own purposes. The court held in each case that the part of the building leased was not used for charitable purposes, and not, therefore, exempt from taxation, even though the rents were actually used to carry on the purposes of the organization. It is urged by counsel that if the character of these admittedly charitable corporations was not effective to exempt their property from taxation, the character and nature of the plaintiff in the present case is wholly immaterial, "and the articles of incorporation are not even material evidence on the issue before the court."

The decisions in the foregoing cases do not sustain or justify such an argument even remotely. In the first place, both cases were submitted upon an agreed statement of facts and there was no ruling had on either admissibility of the articles of incorporation or as to their force and effect, when, if at all, they were received in evidence. It does appear, however, that the charitable corporations contended for the exemption of their property from the tax, and the county treasurer, whose duty it was to collect the tax, contended for the nonexemption. The corporations were not taking a position in conflict with their charter provisions. It is nowhere contended that the charter of a corporation doing a hospital business fixed the character of the hospital as against the tax collector or a stranger to the corporation. All that was said in the opinion in the Gitzhoffen Case, and all that we here say, is that on a question as to the character as well as the purpose of a corporation, the corporation is concluded by the declaration of its articles of incorporation in respect thereto.

It is also urged in behalf of the plaintiff that the hospital was never carried on for pecuniary profit for the reason that no dividends were ever declared or paid to the stockholders and none were declared or paid for the year 1928.

The fact that the managing directors of a hospital operated for profit deemed it advisable to permit the earnings of the institution to accumulate and then appropriate such funds into buildings and equipment for the benefit of the hospital, rather than to pay them out as dividends to the stockholders, is not necessarily indicative of either a benevolent or charitable purpose. It often is in line with sound business principles to withhold dividends and convert the money into increased facilities of the institution. Certainly every stockholder is pecuniarily benefited. His holdings in the corporation are enhanced in value. The management which dictated such a policy, in the course of years, when the plant had increased in value to considerable proportions, largely because it was not burdened by the payment of taxes, might be able to dictate a dissolution of the corporation, to the immense profit of all the stockholders. Furthermore, the earnings of the corporation cannot be unreasonably withheld from the stockholders without their consent. They may invoke the power of the court against arbitrary and unreasonable conduct on the part of the board of directors in the accumulation of a surplus in violation of their rights to the profits of the corporation. In this connection there was received in evidence over exception taken by defendant a purported amendment to the articles of incorporation, passed at a meeting of the stockholders January 31, 1928. There were only 2,266 shares of the 4,024 shares outstanding represented. The amendment purported to perpetuate the foregoing policy of the hospital by declaring that:

"In no event shall any profit result from the management or operation of this corporation, or of any of its hospitals or properties, to the incorporators, or stockholders therein, or to any other person, except the general public, for whose benefit this corporation has been organized, and all money received by this corporation from any source whatever, in excess of the actually necessary expenses and disbursements required for carrying out the objects of this corporation, shall be used and held for the sole benefit and advantage of this corporation, in the furthering of the charitable purposes for which it has been organized."

Whatever may be the effect of this amendment, we do not now pass upon. That question is not now before us. Admittedly it has no effect on the tax assessment for the year 1928.

We are unable to find a single distinctive charit-  ∎ able feature that marks the plaintiff's hospital as a charitable institution.

"A charity is a gift to the general public use which extends to the rich as well as to the poor. The test of a charity and the test of a charitable organization are in law the same. The principal and distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits, but derives its funds mainly from public and private charity, and holds them in trust for the objects and purposes expressed in its charter." *Congregational Sunday School & Publishing Soc.* v. *Board of Review,* 290 Ill. 108, 125 N. E. 7, 10; 11 C. J. 303.

The capital obtained by the payment of stock subscriptions for stock in a private corporation organized as a business corporation to establish and maintain a hospital is entirely a different thing, in law, from a fund created by the contributions of benevolent and charitably minded persons with the object of establishing and maintaining a hospital as a nonprofit corporation. The rights of the stockholders and the duties of the directors in the one case are entirely dissimilar to the corresponding rights of the donors and the duties of the trustees or administrators of the fund in the other case. Likewise there is a marked difference in respect to their relations to the state and the public. In reference to this relation of a charitable corporation the Supreme Court of Texas in a very able opinion, in the case of *Santa Rosa Infirmary* v. *City of San Antonio* (Tex. Com. App.) 259 S. W. 926, at page 935, said:

"By their very incorporation for purely charitable and benevolent purposes they have made a contract with the state and with the beneficiaries named in the charters effectually constituting those in charge of the enterprise trustees of an express trust, and their charters in their last analysis and in their legal effect become declarations of trust. It would serve no useful purpose to quote from the

numerous authorities sustaining this view, but the following are cited: Amer. & Eng. Ency. of Law (2d.) 4898; *Linton* v. *Brown's Adm'rs* (C. C.) 20 F. 455; 2 Moravetz on Corporations, § 1046; 1 Perry on Trusts (6th Ed.) § 82."

For the reasons herein stated, the findings of fact and judgment of the trial court will be and the same are hereby reversed. The case is remanded to the district court of Cache county with direction to set aside its judgment and enter judgment in favor of defendant in accordance with the views herein stated. Costs to appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

On Petition for Rehearing. Decided July 23, 1932. [13 P. (2d) 1119.]

PER CURIAM.

Plaintiff has filed a petition for rehearing. It is earnestly urged in support of the petition that the opinion heretofore filed in this cause proceeds upon the erroneous theory that a corporation organized for profit is precluded by its articles of incorporation from showing that its property, or a part thereof, is used exclusively for charitable purposes, and hence exempt from taxation under article 13, § 3, of the Constitution of Utah.

Plaintiff corporation, as shown by its articles of incorporation, was organized for profit. Its property was used for the purposes mentioned in its articles of incorporation, and hence the use to which the property was put was likewise for profit and not for charitable purposes. The mere fact that the profits derived from conducting the hospital were used for its enlargement rather than disbursed to the stockholders in dividends did not change the character of the use to which the property of plaintiff corporation was

put. Increasing the assets of the corporation and hence the value of the stock held by its stockholders is in no sense a charitable purpose.

The facts disclosed by the record in this case do not involve the question of a corporation organized for profit using its property for charitable purposes, and therefore it is wholly unnecessary, and we do not express an opinion concerning such a state of facts.

The petition for rehearing is denied.