**BENEVOLENT AND PROTECTIVE ORDER OF ELKS NO. 85, Plaintiff,**

v.

**TAX COMMISSION of the State of Utah et al., Defendants.**

**No. 13826.**

Supreme Court of Utah.

June 10, 1975.

George C. Morris of Morris & Robinson, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Michael L. Deamer, Asst. Attys. Gen., R. Paul Van Dam, Salt Lake County Atty., Bill Thomas Peters, Sp. Deputy Salt Lake County Atty., Salt Lake City, for defendants.

MAUGHAN, Justice:

This is an action in certiorari to review the proceedings and order of the Tax Commission of the State of Utah. Petitioner made application to the Salt Lake County Board of Equalization for an exemption from an ad valorem property tax levied for the year 1973, against its property located at 139 East South Temple, Salt Lake City, Utah. This application was de-

nied by said Board, whereupon petitioner appealed to the Tax Commission for the State of Utah, and after a formal hearing there the Tax Commission sustained the decision of the Salt Lake County Board of Equalization. It is from this latter decision that petitioner appeals to this court and asks that the Tax Commission be overruled, or in the alternative that a partial tax exemption be granted.

The pertinent findings of the Tax Commission are:

4. The Elk's Lodge building in question is made up of five floors, plus a basement constituting six floors—the use of which includes a large variety of social functions, including dinner, dancing, liquor consumption, organization meetings, as well as some charitable functions, which take place in the Elk's Lodge building each year.

5. The third floor of the Elk's Lodge building, known as the Goodwill Room, is operated exclusively for charitable purposes and the distribution of clothing to the needy.

6. Proceeds from food sales, liquor and cigar consumption on the premises, after expenses, go into a general fund to be, in part, used for the benefit of different charitable programs of appellant's.

7. In fiscal 1973, approximately $300,000 gross revenue was received by appellant, $39,000 of which was received specifically for charitable purposes and $29,000 of which was actually expended for charitable purposes.

8. Appellant performs patriotic, charitable and civic functions, which include an annual Christmas party for the crippled and the handicapped; Elk's Boys' and Girls' Club, scouts, youth scholarship programs, foreign exchange students' programs, and veterans' remembrance programs—all of which renders a great service to the community.

9. The majority of charitable functions fulfilled by appellant are through cash donations of members, plus a multitude of man-hours contributed outside of the premises in question.

10. Other than the Goodwill Room on the third floor of the building, and other than some organizational functions, most other charitable functions are held at locations and buildings other than the building here in question.

11. The appellant participates in many other civic, patriotic, and worthwhile activities, but such participation does not constitute the exclusive charitable use of the property.

From these findings the Tax Commission concluded:

1. Article XIII, Section 2 of the Utah State Constitution, providing that lots with buildings thereon used exclusively for either religious worship or charitable purposes shall be exempt from taxation (see, also, Utah Code Annotated, Section 59–21–1 (1953)) is applicable to the case at hand.

2. Appellant's case of *Elks v. Groesbeck,* 40 Utah 8 [sic][120 P. 192], is not applicable to the present situation, since a substantial portion of appellant's area is used for membership, social and recreational or is unused for any purpose, and the above-cited case held that members' activities were incidental to its charitable use and is, therefore, differentiated from the present situation.

3. Exemption from ad valorem property taxes in the State of Utah is based upon actual use of the property in question and not on the use of income derived from the operations thereon, or on participation in civic and patriotic functions.

4. Appellant's property in question during the calendar year 1973 was not used exclusively for charitable or religious purposes. The decision of the Salt Lake County Board of Equalization should be, therefore, affirmed.

At the outset it should be noted that petitioner is a nonprofit organization with a

charitable object. Article 4 of its articles states:

> That the purposes for which this corporation is formed are fraternal, charitable, patriotic, historical and educational.
> . . .

The record further shows that, in the event of dissolution, no equities would remain with its members.

Our constitutional provision Article XIII, Section 2, provides:

> . . . lots with the buildings thereon used exclusively for . . . charitable purposes, . . . shall be exempt from taxation.

Two questions confront us. They are: (1) What is charity? (2) Is the subject lot with the building thereon used exclusively for charitable purposes?

This court in Salt Lake Lodge No. 85 B. P. O. E. v. Groesbeck,[1] applied this same constitutional provision to the activities of this same petitioner sixty-four years ago, and determined a tax exemption proper. It did so after determining the intent of the Constitutional Fathers to be one of encouragement for charitable works; and that the weight of authority evidenced by cases from other jurisdictions with like, or similar, constitutional and statutory provisions supported that conclusion. The court said:

> The general rule is that when private property is claimed to be exempt from taxation the law under which the exemption is claimed will be strictly construed. . . . There is, however, an exception to this general rule, and statutes exempting property used for educational and charitable purposes or for public worship, under the great weight of authority, should receive a broad and more liberal construction than those exempting property used with a view to gain or profit only. The reason for the rule is

that the state, by exempting property used exclusively for one or more of the purposes mentioned from taxation, is presumed to receive benefits from the property equivalent at least to the public revenue that would otherwise be derived from it. And manifestly the purpose of the statute in exempting property used exclusively for charitable purposes is to encourage the promotion of institutions and organizations having for their object the care and maintenance of the indigent and destitute citizen, the helpless orphan and the poor who are sick and afflicted, and whose charity and ministrations in these respects correspondingly relieve the State of such burdens.

In Stockton Civic Theatre v. Board of Supervisors,[2] the court observed that:

> . . . charity is not confined solely to the relief of the needy and destitute, but comprehends " 'as well activities which are humanitarian in nature and rendered for the general improvement and betterment of mankind, . . .' " the exemption is granted for charitable purposes, . . . and, as we have seen, charitable activity must benefit the community as a whole or an unascertainable and indefinite portion thereof. Thus the many nonprofit corporations and organizations which exist primarily for the benefit of their shareholders would not qualify for the exemption.

In the case of United Presbyterian Association v. Board of County Commissioners,[3] the court there quoted with approval a definition from Jackson v. Phillips, 96 Mass. (14 Allen) 539, as follows:

> A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with the existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of

1. 40 Utah 1, 120 P. 192 (1911).

2. 66 Cal.2d 13, 56 Cal.Rptr. 658, 423 P.2d 810 (1967).

3. 167 Colo. 485, 488 P.2d 967 (1968).

education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

■ The same court went on to enunciate a very wise standard to be followed in the determination of what a charitable purpose is, by saying that it would not attempt to establish a fixed definition "lest by words of exclusion we might unintentionally seem to impose a legal restraint upon that cardinal grace which by its very nature thrives in proportion to the freedom of its proper exercise." We approve that standard.

The questions presented by the words "used exclusively" are not unique with this jurisdiction. Many other jurisdictions employ that term, or terms of similar import, and the various taxing authorities seek to advance the strictest literal definition of the term, as the control in construction of the constitutional or statutory provisions. However, we view the weight of authority in this country to be in accord with the holdings of this court in Parker v. Quinn, 23 Utah 332, 64 P. 961 (1901); Groesbeck, Ibid.; Odd Fellows Building Association v. Naylor, 53 Utah 111, 177 P. 214 (1918); William Budge Memorial Hospital v. Maughan, 79 Utah 516, 3 P.2d 258, 13 P. 2d 1119 (1931); and Friendship Manor Corp. v. Tax Commission, 26 Utah 2d 227, 487 P.2d 1272 (1971). In these jurisdictions, the application of the severe definition of the word "exclusive" to the use of property for charitable purposes is not made, lest it choke off charitable enterprises which the laws of our society seek so plainly to encourage. See Proceedings, Constitutional Convention, 1895, Vol. 1, pp. 237–240, as an instance of the concern evidenced for religious and charitable institutions.

The Supreme Court of Montana, in Flathead Lake Methodist Camp v. Webb,[4] dealt with the term "exclusive use" as follows:

The only reason for struggling with a characterization is the presence of the words "exclusive use" in the statute. Those words have been consistently held to mean the primary and inherent use and not the mere secondary or incidental uses of the property. . . . On the other hand, innocent collateral activities essential to the furtherance of the true purposes of the corporation should not blind the court to the genuineness of those purposes nor to the sincerity of their actual accomplishment.

These statements are in direct support of the holding in Groesbeck, Ibid.:

So long as the incidental uses made of such buildings do not exclude or interfere with their use for religious worship, or for charitable purposes, as the case may be, then such incidental uses do not deprive the property of the benefit of the exemption. To hold otherwise would, in effect, annul the provision of the constitution and statute under consideration by defeating the very purposes for which it was adopted.

There are a great number of cases of the instant nature, and they usually arise at times when the economy finds itself in a state of decline. The institutions and entities which are sought to be taxed, in every instance, have within them some use of their property, which would seem to depart from the term "exclusive use," thus rendering them liable to an ad valorem tax. Yet, they also have within them some use of the property which would seem to be solely charitable, thus rendering them exempt from taxation.

Some cases determining property partially taxable do so on the basis that the property is partially used for commercial purposes, e. g., renting of a portion of the property, even though the rents are applied for charitable purposes. Here we have no

4. 144 Mont. 565, 399 P.2d 90 (1965).

question of commercial use versus charitable use because there is no part of the subject premises which are used commercially —no part is rented and no income is received.

Some decisions determine property to be exempt when the dominant purpose for which the property is used is charitable, and even though there are collateral activities, if they are innocent and essential to the furtherance of the dominant and true purposes of the institution, such activities do not "blind the court to the genuineness of those purposes, nor to the sincerity of their actual accomplishment." In such cases the use of the property is held to be exempt. Again, in such decisions we find the general statement that we must strive to maintain religious, charitable, educational and fraternal institutions "which have been essential and integral parts not only of the foundation but in the maintenance of the form of government and type of society in which we live."[5]

The Tax Commission has concluded that Groesbeck is not applicable in the instant matter for the reason that the court in 1911 determined that the members' activities conducted on the premises were incidental to the charitable use of the premises "and is, therefore, differentiated from the present situation." A careful reading of Groesbeck will reveal that petitioner's activities in 1911 were very much the same as they are now. At that time, petitioner maintained a lunch room, reading room, billiards and card room, lodge room, wherein social dancing was enjoyed, maintained rooms where liquor and cigars and refreshments were sold at a profit, to members only. The court held that the social activities, the gain from the sale of liquor, cigars and refreshments were merely incidental to the use made of the building in promoting good fellowship in dispensing charity. The record shows that at the present time these same activities are carried on by petitioner, with the exception, perhaps, that petitioner no longer operates a restaurant for its members; and with the further exception that the charitable activities of petitioner have, if anything, increased over what they were sixty-four years ago.

Through its drug and alcoholism prevention program, petitioner supplies support to the Odyssey House (a rehabilitation center for drug victims), in the form of food, money, clothing; and pamphlets concerning drug and alcohol abuse are provided for high schools and other schools throughout Salt Lake City. Through its Crippled and Handicapped Committee petitioner provides and maintains prosthetic supplies, at no charge to any individual referred. Periodic entertainments for crippled and handicapped persons are conducted. At Christmastime a party is held for crippled and handicapped persons who are brought to the lodge by the members, and during a recent season approximately 400 such persons were in attendance. New and used clothing is given to the crippled and handicapped. Petitioner sponsors a Boy Scout Troop No. 534. This troop is composed completely of crippled and handicapped boys, and is commanded by a handicapped scout master. Some of the boys have attended the annual scout camporees, summer camp in the Uintahs, and an annual banquet and award night, to which other handicapped boys are invited to attend.

The entire third floor of petitioner's building is known as the "Good Will Room." Petitioner buys, stocks, stores and issues new clothing and receives donations of used clothing. Every child referred to petitioner is outfitted completely with new clothing. The used clothing is primarily for needy adults. New shoes for the children are purchased from a local shoe store. For hospitalized veterans, petitioner provides entertainment, and an arts and crafts program. Through its Americanism Section petitioner greets every new citizen, is-

5. North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County, 94 Idaho 644, 496 P.2d 105 (1972).

sues a packet containing appropriate fundamental documents, and travels to various courtrooms at its own expense. Its Boys' and Girls' Club Committee sponsors a club at Main Street and Thirteenth South Street; it uses athletics to raise grade point averages of boys, and sponsors a Youth Scholarship Program for boys and girls, and through its Benevolent Trust Fund sponsors exchange students from various countries, and pays tuitions of deserving students in Utah schools.

Not all of these activities provide services, which, if not provided by petitioner, would necessarily need to be provided by society. However, a number of them do, they are substantial, and they fall comfortably within the ambit of charity. In support of these programs petitioner expended the sum of $29,000 for fiscal year 1972—not an insignificant amount. A substantial contribution of note are the thousands of hours spent by members in producing these charitable works.

This brings us to another thrust of the decision on appeal. The Tax Commission finds that in large part the charitable activities of petitioner are carried on away from the premises for which exemption is sought. Thus, even with the impressive list of charitable activities, it is implied that when such activities are not accomplished on, or within, the confines of the premises they do not entitle petitioner to a tax exemption. With this we cannot agree.

█ Petitioner needs to have some location from which to organize its activities. It needs to have some location to provide office space for the conduct of its activities, for the maintenance of its premises, and to provide a rallying point round which its members may be encouraged to join in fraternal fellowship, with an eye toward accomplishing the charitable purposes in which petitioner engages. "Exclusive use" of the lot with the building

thereon does not require all charitable activity take place on the lot with the building thereon.[6]

Nothing in this opinion can be construed to sustain a tax exemption based solely on the fact that a nonprofit organization has a charitable purpose as its object. Nor, would this opinion prevent the loss of a tax exemption should an organization allow its charitable purpose to become dulled, and cease to be its dominant activity.

█ The positions taken by the Salt Lake County Board of Equalization and the Tax Commission are contrary to the decided law in Utah. They are contrary in that they seem to require that no other use may be carried on, other than a charitable use; and that any such use must be conducted solely on the premises. Further, the evidence does not support the position that only an incidental charitable use is made of the subject premises.

█ This court pursuant to statute may review the decisions of the Tax Commission, and a great deal of latitude is given to that Commission's discretion in performing its duty. This court will not disturb the Commission's conclusions unless they are *contrary to law, or otherwise erroneous.* Judged by those standards the determination by the Commission of the issues submitted must be overturned.[7]

The decision of the Tax Commission is reversed, and remanded with instructions to grant to petitioner an exemption from ad valorem taxation pursuant to its petition. No costs awarded.

HENRIOD, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (concurring):

I concur, and in doing so express these thoughts in supplementation:

The term charity, in usage and in dictionary definition, is broad in compass,

6. Sahara Grotto and Styx Inc. v. State Board of Tax Commissioners (Indiana), 261 N.E.2d 873 (1970).

7. Butler v. State Tax Comm., 13 Utah 2d 1, 367 P.2d 852.

having a number of related meanings. While it includes giving to the poor and needy, it is not restricted to that narrow concept. In its larger sense it includes love and concern for the welfare of one's fellowmen. Safeguarding and promoting the general welfare of citizens is one of the responsibilities of government. This includes their educational, cultural and recreational needs. Insofar as private philanthropy and charity are willing to help bear those burdens, it is and should be the policy of the law to assist and encourage them in doing so. One of the ways of accomplishing this is by relieving them of taxation on the property committed to such purposes.

Supportive of the foregoing is the realization that a very substantial part of the progress of mankind in all areas of learning and culture, whether in science, art, literature, music or whatever, is attributable to patronage and support by sources properly characterized as charitable in this broader sense.

Comparison with property exempted as being used "exclusively for religious worship" is helpful. In order for property to come within that language it need not be so sancrosanct that no money whatsoever changes hands therein. Even with church buildings, nearly all have some social and recreational auxiliary activities and some fund raising activities to support them which involve a certain amount of such commerce. But where the main purpose is to provide the public a place for religious worship, and not to make a profit in the ordinary commercial sense, either for individuals or for the church, the property is held to be exempt under the quoted provision of our constitution (Art. XIII, Sec. 2). Similar reasoning should apply to exempt property as being used "exclusively for charitable purposes."

The doctrine of stare decisis, which dictates that there should be some solidarity in and respect for established law is also a persuasive consideration here. I realize that the fundamental issue is a constitutional one. Nevertheless there has been a judicial determination on essentially the same facts in the Groesbeck case (Footnote 1, main opinion), which has stood as the law for 64 years. In the absence of clear and persuasive realization of error, any change would better come through the regularly prescribed processes for changing the law, through legislative and/or constitutional amendment, rather than any change by whim or caprice, or difference of opinion in an administrative interpretation. Accordingly, I concur with the decision based on established law and reversing the order of the Tax Commission.

ELLETT, Justice (dissenting):

I dissent.

There is no question but what the individual members of the Benevolent and Protective Order of Elks, hereinafter referred to as "Elks," do a lot of charitable work. However, the problem before us is whether or not the building is "used exclusively for . . . charitable purposes" as required by Art. XIII, Sec. 2, of the State Constitution.

The gross revenue per year approximates $300,000, and of this sum, less than $30,000 was spent for charity. I am unable to believe that an institution which spends less than 10 per cent of its income for charitable purposes is entitled to have a six-story building exempt from taxes on the ground that it is being used exclusively for charitable purposes.

The main opinion sounds like a bull elk trumpeting its virtues in the forest. The court should accord to the Tax Commission the privilege of finding the facts and affirm those findings unless they are capricious, arbitrary, and not based on evidence. The Tax Commission, on competent evidence, found that the building was not used exclusively for charitable purposes. I would affirm that finding.