Earl M. BAKER, Salt Lake County Assessor, Plaintiff and Appellant,

v.

ONE PIECE OF IMPROVED REAL PROPERTY located AT 607 EAST 200 SOUTH STREET, SALT LAKE CITY, owned by Loyal Order of Moose, No. 259, Defendant and Respondent.

No. 14850.

Supreme Court of Utah.

Oct. 3, 1977.

Bill Thomas Peters, Asst. Salt Lake County Atty., R. Paul Van Dam, Salt Lake County Atty., Salt Lake City, for plaintiff and appellant.

Benjamin Spence, Salt Lake City, for defendant and respondent.

ELLETT, Chief Justice:

This is a suit brought by the County Assessor of Salt Lake County, Utah, to determine the taxable status of a building and lot owned by the Loyal Order of Moose. The matter was submitted to the trial court pursuant to a stipulation that included the pleadings filed with the court and the deposition of the Secretary and Club Manager of the Loyal Order of Moose.

The trial court, relying on the decision of this Court in the case of *Benevolent and Protective Order of Elks v. Tax Commission*[1], ruled that the property was not subject to tax because it was used exclusively for charitable or religious purposes. The *Elks* case differs from the instant one in several important particulars. In the first place, the evidence there showed that

1. Utah, 536 P.2d 1214 (1975).

one entire floor was used exclusively for charitable purposes. In the second place, practically ten percent of the total expenses was for charitable purposes.[2] In any event, each case should be decided on its particular set of facts. The general rule that an exemption from taxation is to be strictly construed governs in the application of tax-exemption provisions to clubhouses and organizations such as fraternal and benevolent societies. In 39 A.L.R.3d 640 et seq., at page 647 of the annotation, the following statement is found:

> Cutting across the varying phraseology of the nonexpress-type exemption provisions involved in the cases collected herein is the view that *a lodge building of a fraternal order is not exempt if the dominant uses of the building are for the social enjoyment of the members*, since such a building in its legal aspect is no different from the clubhouse of an ordinary social club. And in a number of cases property of fraternal or benevolent societies was held to be without the provisions of a nonexpress-type exemption statute, since at least a portion of such property was utilized to produce an income, as by being leased for commercial purposes. [Emphasis added.]

> . . . Additionally, future cases may well be affected by policy considerations arising out of the current tax pinch on states and municipalities, which, it may be implied, has prompted many jurisdictions to alter the application of tax-exemption statutes by construing them more stringently in favor of the taxing authority.

Section 2, Article XIII of the Utah Constitution provides that ". . . lots with the buildings thereon used exclusively for either religious worship or charitable purposes, . . . shall be exempt from taxation." This section is codified by our statute[3] which states that such property shall be exempt from taxation. The question involved in this case is whether the property is used *exclusively* for religious worship or charitable purposes. There is no claim made to the effect that the property is used exclusively for *religious purposes.*

■ The foregoing section of the Constitution also provides that "all tangible property in the state, not exempt under the laws of the United States or under this Constitution, shall be taxed . . ." If an owner claims that his property is exempt from taxation, the burden is upon him to show that it falls within the stated exception.[4]

■ In the instant matter, the deposition of the Secretary and Club Manager showed that the members use the building principally as a place to lounge, drink liquor, and play cards. It is used as a restaurant, open to the general public, from 11:30 a. m. to 3:00 p. m. Monday through Friday of each week and at prices comparable with other restaurants in the city. Dances and entertainment are held on Friday and Saturday evenings where only members and their guests are permitted to attend. During the week the building is open to members for social activities such as bingo and sewing as well as for usual lodge functions. The rooms are also rented out for weddings when sponsored by a member.

The lodge does sponsor charitable parties for children, about six or seven each year; and each year, it sends $4.00 from the members' annual dues back to the national headquarters in Illinois, which money is used partially, at least, in maintaining a home for needy children. The costs for the chil-

---

**2.** The author of this opinion did not agree with the ruling in the *Elks* case.

**3.** 59–2–1, U.C.A., 1953 as amended.

**4.** *Parker et al. v. Quinn*, 23 Utah 332, 64 P. 961 (1901).

dren's parties for 1975 were listed as follows:

| | |
|---|---:|
| Lagoon | $ 142.00 |
| Halloween | 328.75 |
| Christmas | 394.74 |
| Easter | 439.65 |
| 2 ten-speed bikes given away at lagoon party | 158.00 |
| Total Expenses: | $1,463.14 |

Other expenses for the Moose Lodge Special Community Projects for the same year were:

| | |
|---|---:|
| Bi-Centennial Flag Raising | $ 52.13 |
| Restoration supplies and flag at Memory Grove | 302.31 |
| Sub for Santa (4 families) | 791.39 |
| Christmas boxes for the hospitalized | 36.70 |
| Little League | 150.00 |
| Candy trays for children at Medical Center | 45.00 |
| Idaho disaster donation | 300.00 |
| Total Expenses: | $1,677.53 |

The total amount of money spent on charitable objects during 1975 was $6,558.75, out of a total expenditure of approximately $309,000; and this charitable outlay was greater than that of *any prior year*. It amounted to slightly more than two percent of the total expenditure.

The receipts for the year 1975 were $170,-621.18 from the lodge and $178,733.60 from the club or, a total of $349,354.78. It thus appears that there is more club activity than lodge activity, and club activity consists chiefly of drinking, dancing, card playing, and other social functions. In connection with the club activities carried on in the building, the record shows the following amounts were spent on "bar supplies," (liquor and mixes):

| | |
|---|---|
| Year of 1973 | $17,525.77 |
| Year of 1974 | 27,740.41 |
| Year of 1975 | 31,281.16 |

In addition, the club spent the following amounts for liquor licenses for the three years: $620, $801, and $574. It also spent $90 per year as premium on the liquor license bond.

When the activities conducted in the building are examined, it appears that the property partakes more of the nature of a social club than it does of a place used *solely* for religious or charitable purposes. It does not come within the constitutional exemption from taxation.

The judgment of the trial court is reversed and the case remanded with directions to order the property to be taxed along with other nonexempt property in the county. No costs are awarded.

WILKINS, J., concurs in the result.

HALL, J., having disqualified himself does not participate herein.

CROCKETT, Justice (concurring in result).

There are certainly very few, if any, properties that are or could be, used exclusively for either religious or charitable purposes if the adverb "exclusively" be taken in the absolute sense of solely and without any other purpose or motive. It is necessary to give the total language a sensible and practical interpretation and application consistent with the more fundamental governmental purpose of promoting the general welfare of the citizenry, including providing for their educational, cultural and recreational needs. To spare further exposition thereon, see *Elks v. Tax Commission*, footnote 1 of the main opinion, and particularly my own views as set forth in the concurring opinion.

The main opinion aptly observes that each case should be analyzed and decided on its own facts. Assuming the correctness of defendant's contention that the general purpose of the Moose Lodge exists and is operated mainly for recreational and social purposes; and that it thus assumes a public responsibility of providing for social and recreational needs of those who desire to avail themselves of it, there are other aspects of private operation and benefit, including the operation of the restaurant, which appears to be an outright commercial enterprise, which is neither segregated for tax purposes nor taxed as such. Notwithstanding my views as referred to above, upon the basis of the facts as agreed upon and presented here, I am persuaded to agree with the result of the decision.

DEE, District Judge (concurring in result).

I concur in the opinion of the Chief Justice and have been endeavoring to determine if it is possible to set up definite guidelines for the use of County Attorneys to determine what constitutes "property used exclusively for religious worship or charitable purposes." Unfortunately, I have not been able to arrive at a workable set of ground rules and this case leaves that issue still not clearly defined. Specifically, I had hoped to encompass in the definition of "charitable purpose" donations to organizations that are in the arts, music, dance, etc. by researching what has been done in other jurisdictions in this regard and have not succeeded in precisely fixing this other than was the case in *Benevolent Protective Order of Elks No. 85 v. State Tax Commission of State of Utah*, 536 P.2d 1214 (1975) wherein the court said:

> . . . that it would not attempt to establish a fixed definition 'lest by words of exclusion we might unintentionally seem to impose a legal restraint upon the Cardinal Grace which by its very nature thrives in protection to the freedom of its proper exercise.'

This then leaves Utah with no specific definition as to what is charity and therefore the cases must be decided case by case. Thus we have a situation where 10% of an organization's income plus the use of a certain portion of the building is sufficient to gain an exemption from taxation, but 2% of the income and less use of the building is not. Perhaps a case will come to this court which raises this point directly at which time the court may find a definition for "charitable purposes" which should include funds as well as voluntary man hours and voluntary use of the facilities in a "public purpose" so that this phrase can be more precisely defined.

MAUGHAN, Justice (dissenting).

For the following reasons I dissent.

The perplexing issue posed by this case is the delineation factually between those instances where the dominant use of the property is for charitable purposes with an incidental use for social purposes and the converse where the charitable purposes cease to be the dominant activity.

In the *Elks* case[1] this court recognized the need of an organization to have a specific location from which to conduct its activities, to provide a rallying point to encourage its members to engage in charitable activities. So long as the members' activities on the premises are incidental to the charitable use of the premises, the property is exempt from taxation under Article XIII, Section 2, Constitution of Utah.

The intent of the Constitutional fathers for this provision was to encourage charitable works. The rationale was that the presumed benefits to the public would be equivalent to the revenue otherwise derived from the property. Thus in determining whether the primary or dominant use of the property is for charitable purposes, the total contributions to the public, not only in terms of money, but in man hours should be contrasted with the revenue lost through the exemption. It is only when an evaluation of the charitable activities could be deemed de minimus; or could be characterized as an obvious, blatant, attempt at circumvention of taxation, by a few desultory programs of a charitable significance, that the exemption should be denied.

The evaluation in the majority opinion considers only the balance sheet in its determination that the dominant use of the property was for social purposes. There was no mention of the man hours devoted to community projects, such as, the labor expended in repairing facilities in Memory Grove, the ongoing program of contributing blood, and the contributions of goods as well as labor in preparation of Christmas gifts for the impoverished.

The contributions of the membership to the public weal in other forms as well as the specific financial donations exceed the loss of any revenue by granting the exemp-

1. *Benevolent and Protec. Order of Elks No. 85 v. Tax Comm.*, Utah, 536 P.2d 1214 (1975).

tion. The consequence of the majority opinion is to discourage the voluntary activities of organizations which do so much to alleviate human discomfort. It seems to advocate the philosophy that government through public revenues should be the exclusive avenue through which all charitable endeavors should be conducted.