EYRING RESEARCH INSTITUTE, INCORPORATED, Petitioner,

v.

TAX COMMISSION OF the State of UTAH, and Vernon L. Holman, R. Milton Yorgason, Eleanor Lee Brennan and David Duncan as Commissioners of the Tax Commission of the State of Utah, and Harrison Conover, Utah County Assessor, Respondents.

No. 15320.

Supreme Court of Utah.

Aug. 1, 1979.

M. Dayle Jeffs, of Jeffs & Jeffs, Provo, for petitioner.

Robert B. Hansen, Atty. Gen., Salt Lake City, for respondents.

WILKINS, Justice:

We review a decision of Defendant Tax Commission of Utah (Commission) that Eyring Research Institute, Incorporated (Petitioner) is liable for personal property taxes assessed against it in the amount of $831.89 for the taxable year 1975. Petitioner asserts that its personal property should be excluded from the tax rolls under the provisions of Utah Const., Art. XIII, § 2, (Art. XIII, § 2) which raises an exemption in favor of organizations operating "exclusively for . . . charitable purposes. . . . ."[1]

Utah County taxed Petitioner's personal property. Defendant Utah County Board of Equalization denied Petitioner's request for tax exemption. That denial was affirmed by the Commission, whose decision is now before us.

The facts concerning Petitioner's operation are substantially not in dispute. Thus our inquiry is limited to the question whether Petitioner falls within the scope of the exemption raised by the constitutional language.

Petitioner was organized on September 6, 1972, as a non-profit corporation for the purpose of undertaking scientific research

---

1. The statutory codification of the pertinent language of Art. XIII, § 2, appears at Utah Code Ann., Sec. 59–2–1, 1953, as amended.

projects which it deems to be in the public interest. Petitioner owns no realty; however, it does own personal property. Petitioner's Board of Directors serves without pay and realizes no incidental pecuniary benefit for its service. Petitioner's Articles of Incorporation forbid the use of its earnings for the private benefit of any of its members, directors, officers or other individuals, and further provide that Petitioner's assets shall be distributed to the Church of Jesus Christ of Latter-day Saints upon dissolution. Petitioner is exempt from federal taxation under the provisions of the Internal Revenue Code.[2]

Petitioner offers its chosen research capabilities to anyone interested in purchasing them. Individual contracts are entered into between Petitioner and each of its customers providing for the discharge of various research assignments. Petitioner's fee for its services is restricted to the actual costs of each project so undertaken, plus a three to six percent surcharge representing administrative expenses. Thus Petitioner derives no profit from its operations. However, the record does not indicate that Petitioner's fees are substantially, or even noticeably, lower than fees charged by private, profit-making research organizations for similar research services.

During its first twenty-seven months of operation, Petitioner received approximately $2,500,000 in research contracts. Government contracts accounted for ninety-six percent of Petitioner's work; less than four percent of Petitioner's research was performed for private industry. The United States Department of Defense is by far Petitioner's best customer, accounting for forty-eight percent of total receipts; other federal and local governmental agencies accounted for another forty-eight percent of total receipts.

According to its Articles of Incorporation, Petitioner exists "for the advancement and extension of scientific knowledge" and for "the improvement of the general standard of living and the peace and prosperity of mankind." This solicitude is directed especially toward the Rocky Mountain region, the economic well being of which Petitioner hopes to improve. Petitioner's various research projects, performed under individual employment contracts, have included such praiseworthy efforts as: studies to protect our nation's strategic missiles during flight; research designed to attain a feasible coal gasification process; investigation of the energy potential of Utah's tar sands; development of a collapsible safety barrier for highway use; water quality assurance projects; and a sociological impact study involving a proposed ski resort and the community near which it is to be located.

The results of Petitioner's research are generally, though not invariably, available to the public after they are given to the customer. Petitioner sends representatives to various professional seminars, where many of its findings are disseminated. However, the record fails to demonstrate that Petitioner's function as a disseminator of knowledge is paramount to its chief preoccupation, which is the satisfaction of its individual customers. Moreover, in a very few instances Petitioner has shown a willingness to withhold its research findings from the public at the request of a nongovernmental client. This policy might assist in giving that customer an exclusive advantage in the market place.

▮ In Utah, taxation of all tangible property is the rule and the exemption is the exception.[3] The rule of taxation is founded on the principle that the property generally within the State should bear a fair share of the burdens of government.[4] Therefore, when a property owner claims the protection of an exemption, the burden is upon him to demonstrate clearly and unequivocally that he falls within the exemption; any reasonable doubt must be re-

---

**2.** Specifically, § 509(a)(2) thereof.

**3.** Art. XIII, § 2; *Parker v. Quinn,* 23 Utah 332, 64 P. 961 (1901).

**4.** *Id.*

solved against him.[5] The fact that a person or entity is exempt from federal taxation under the Internal Revenue Code is not determinative of a claim for an exemption under Utah law,[6] though it may be a factor for consideration.

The Commission raises the question whether Art. XIII, § 2, provides *any* basis for excluding the *personal* property of a charity from the tax rolls. The pertinent part of Art. XIII, § 2, pertaining to charities, appearing in the first paragraph thereof, reads as follows:

> *All tangible property* in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. *The property of* the state, counties, cities, towns, school districts, municipal corporations and public libraries, *lots with the buildings thereon used exclusively for* either religious worship or *charitable purposes,* and places of burial not held or used for private or corporate benefit, *shall be exempt from taxation.* [Emphasis added.]

The Commission contends that the language of the second sentence ("lots with the buildings thereon used exclusively for . . charitable purposes") is restricted by its very terms to *real* property; i. e., "lots with the buildings thereon". We need not reach the issue in this case where the Petitioner owns no lots with buildings thereon but does own personal property. The issue we shall discuss, which is dispositive, is whether Petitioner is entitled to an exemption for its personal property because it claims that its activities are charitable in scope.

▮ We conclude Petitioner has failed to sustain its burden of proving entitlement to the exemption as it did not operate "exclusively for . . . charitable purposes"

during the taxable year 1975 and our reasons are as follows:

1. Almost half of Petitioner's research efforts were expended for the Department of Defense in areas not recognizable as charitable.

2. Petitioner's efforts are circumscribed by individual employment contracts and are thus focused on a finite and ascertainable number of individual clients, benefiting the public only incidentally.

3. The benefits realized by the State of Utah and its political subdivisions because of the use to which Petitioner devotes its property are not sufficient to justify an exemption.

4. Petitioner's willingness to restrict disclosure of its findings at the request of a nongovernmental client might assist that client in acquiring a proprietary interest in data developed by the Petitioner, precluding the public's access to Petitioner's research.

5. If Petitioner's function as a disseminator of scientific information is paramount to its purpose of satisfying its individual clients under the terms of its employment contracts, the record fails to demonstrate it.

We need not, and we do not, conclude that any single characteristic listed above is fatal to the assertion of an exemption as a charity. Each claim for the exemption must be reviewed on its own facts.[7] But taken together, a consideration of these characteristics places Petitioner outside the scope of Art. XIII, § 2.

We are sensitive to the multifarious forms which acts of charity may assume. But we feel that even the most generous definition of charity fails to encompass the production of a missile flight simulator for the Department of Defense.

5. *Id.*

6. *Friendship Manor Corporation v. Tax Commission,* 26 Utah 2d 227, 487 P.2d 1272 (1971).

7. *B. P. O. E. v. Commission,* Utah, 536 P.2d 1214 (1975); *Baker v. One Piece of Improved Real Property,* Utah, 570 P.2d 1023 (1977).

Petitioner's efforts are focused upon a discrete and ascertainable number of individual clients by the terms of its employment contracts. The public is benefited only incidentally. The record suggests that many of Petitioner's discoveries reach the public only when, and if, the client passes them on through the channels of commerce, while other findings are shrouded in secrecy because of their potential impact on national security. That Petitioner's research confers an indirect benefit on the public is not challenged. But this can also be said of the research and development division of General Motors. In *Boston Chamber of Commerce v. Assessors of Boston,* 315 Mass. 712, 54 N.E.2d 199, 152 A.L.R. 174 (1944), where a chamber of commerce was denied classification as a charitable institution, the court said:

> Notwithstanding the law's acknowledgement of the manifold new forms in which charity may find expression, *the more remote the objects and methods become from the traditionally recognized objects and methods the more care must be taken to preserve sound principles and to avoid unwarranted exemptions from the burdens of government.* This statement becomes especially pertinent where the alleged charity operates in the fields of trade and commerce. [54 N.E.2d at 202, 152 A.L.R. at 179, emphasis added.]

Modern life is punctuated by some pressing dilemmas which can be resolved only by technological and scientific inventiveness. Petitioner's worthwhile efforts in that direction are applaudable. Nonetheless, we cannot relieve Petitioner of its responsibility to bear a share of the burdens of government. The decision of the Commission is affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.